JEFFERSON COUNTY, Plaintiff in Error, v. JAMES E. FERGUSON et al. heirs, &c., Defendants in Error.

ERROR TO JEFFERSON.

The Circuit Court is invested with the discretion of allowing amendments to a bill in chancery at any stage of the cause.

The law abhors shifts and connivances for the purpose of changing possession of land, and will enforce the original right, so as to prevent the supersedence of the title designed to be defeated.

The court will presume, after a long lapse of time, under peculiar circumstances, that a certificate of sale for land was given, and that the consideration for such certificate has been paid.

THE defendants as the heirs at law of Nelson Ferguson, deceased, filed in the Jefferson Circuit Court, at the August term, A. D. 1845, thereof, against the said plaintiff, their bill in Chancery, for a conveyance to lot No. 28, in block No. 17, in the

town of Mount Vernon, Jefferson county, charging, in substance, that in the year 1819, the said town of Mount Vernon was laid out into blocks and lots, by order of the then acting county commissioners, and by said commissioners ordered to be sold on a credit. That said Nelson, deceased, at the sale of said lots, purchased said lot for about the sum of one hundred and fifty-six dollars, and that said Nelson, deceased, executed to said county, (or to whomsover the notes were made payable,) his promissory note for the purchase-money, with James Johnson as his security, and that said lot has since been paid for, and that it has been in the possession of said Nelson, deceased, and his legal representatives from thence hitherto, and that said Nelson and his legal representatives have paid the taxes on the same since the purchase thereof. That the defendants, by their attorney, had made diligent search for the record authorizing said sale of lots in said town of Mount Vernon at the original sale thereof, but could find nothing of the kind. That no deed, to the belief of the defendants, had ever been executed to the said Nelson in his lifetime, or to his legal representatives, from the fact that there appears to be no record of any such deed. Praying that the said plaintiff should be summoned to show cause, if any they might or could, why they should not appoint some suitable person to execute a good and sufficient deed to the said Nelson *nunc pro tunc*, or that the court would appoint a commissioner for that purpose.

To which bill the said plaintiff demurred, and at the said August term of said court, 1845, the demurrer was sustained by the court. Whereupon the defendants asked and obtained leave to amend this said bill.

To the amended bill the plaintiff filed its answer, denying that the said Nelson, deceased, or any person on his behalf, ever paid for the lot in said defendants' bill described, or that he or his heirs had possession thereof for the space of twenty years, or paid taxes on the same, as in said bill alleged, and further denied all the material allegations in the said defendants' bill alleged, praying to be dismissed with costs, &c.

S. S. Marshall and R. F. Wingate, for plaintiff in error.

W. B. SCATES and D. BAUGH, for defendants in error.

CATON, J.   Four amendments were allowed to this bill, two of which were permitted after the case had been argued, and while it was under advisement in the court below.   The permitting of these amendments is now assigned for error.   We do not think that the decree should be reversed for this cause alone. As a general rule, these amendments are in the discretion of the Circuit Court; and when admitted for furtherance of justice, we ought not to listen to the objection, unless the party can show that his substantial rights have been prejudiced by the amendments which have been allowed.   A case might exist, and we are not prepared to say that this is not that case, where it would be the exercise of a judicious discretion to permit amendments even to the extent allowed here ; but certainly, except to make new parties, amendments should not be allowed after a cause has been submitted to the court, unless under extraordinary circumstances of necessity.   That the court has authority to allow such amendments upon proper conditions, there can be no doubt; for, without looking into the English practice on the subject, we find the authority expressly given in the thirty-fourth section of our Chancery act.

The proofs in the case show, beyond a controversy, that Nelson Ferguson the ancestor of the complainants, purchased the lot in question in 1819, at a public sale of lots by the county, upon a credit, and that the terms of sale were, that he should give a note for the purchase-money payable in six, twelve, eighteen, and twenty-four months, upon the execution of which he should receive a certificate of purchase, and that upon the payment of the notes he should receive a deed.   We think the proofs show, with equal clearness, that the lot has ever since been claimed under that purchase by Ferguson, or those claiming under him. That the lot was actually taken possession of under that purchase, and a house built upon it in 1829, which was occupied by tenants under that title until the commencement of this suit.   It is true that in 1848, one McArtee attempted to hold the lot in subordination to the title of the defendants ; but the facts of the case show that he could not divest himself of the character of a

tenant under the complainants' title. The tenants who had leased the lot held over after the expiration of the lease, and while thus holding over, sold their right of possession to one Cox, who, under that purchase, occupied the premises till his death, when he left a stock of groceries in the building, of which McArtee took possession, claiming as legatee of Cox under a nuncupative will. While thus holding possession, he renounced the complainant's title and took a lease from the county, under which he claimed to hold. This was in violation of his landlord's rights. The tenancy clearly continued under all these various transfers, even after the expiration of the lease ; and when McArtee took possession of the store and goods claiming under the deceased tenant, he was obliged to assume the same character of tenant which his testator had occupied, and having thus entered, he could not change the tenancy or character of the occupancy. Had he subsequently surrendered the possession to the county, the latter would have been obliged to assume the character of tenant, under the complainants' title. The law abhors such shifts and connivance for the purpose of changing the possession of land from one claimant to another, and will ever hold such possession to be in subordination to the title designed to be superseded ; and no length of possession thus acquired, can operate to the prejudice of the title designed to be defeated thereby.

Since 1829, then, the premises have been actually occupied under the complainants' title. The proof also shows, that for most, if not all, of the time since the sale of 1819, the county has treated the lot as private and individual property by assessing it for taxes and collecting the same. These are facts not seriously controverted. The controversy is made upon the questions, whether Nicholas Ferguson complied with the terms of sale by the execution and delivery of the note required; and whether a certificate of purchase was made to him.

The evidence upon these points, if not conclusive, is quite satisfactory. Upon the first point, several witnesses speak. Mr. Johnson.says he signed the note for the purchase-money, on the evening of the day of sale, as security for Ferguson; that the note was executed in the presence of the court, but that he does not recollect of having seen it actually delivered. J. Pace was

the clerk of the court at the time, and says it is his impression that Nelson delivered the note at the time, but has no distinct recollection of it; that the notes given at the sale were put into the hands of the county treasurer. He cannot recollect of the delivery of the notes given for the purchase of lots at that sale in any particular case. If this evidence, when taken in connection with the notorious claim of the lot under the sale, and the long and open possession of, and improvements made upon, the lot by those claiming under Ferguson, together with the levy and collection of taxes for the lot by the county, would still leave us in doubt as to the execution and delivery of the note for the purchase-money by Ferguson, that doubt must be entirely dispelled by the testimony of Governor Casey, who states that he was one of the county commissioners at the time of the sale of the lots. He says he recollects distinctly that Ferguson purchased the lot. In answer to the fourth interrogatory put to him, which inquires whether Ferguson executed and delivered his note for the purchase-money, with approved security, he says, " he did so execute and deliver his notes." To controvert this there is no evidence; but it is supported by the other testimony, and all the circumstances of the case. We take it to be clearly established, that Ferguson did every thing on his part to comply with the terms of the sale, and it may not be very important whether a certificate of purchase was issued to him or not; yet we are of opinion that there is sufficient testimony in the case to show that such certificate was issued at the time. In answer to the fifth interrogatory, Governor Casey says, " My best recollection is, that we did execute such a certificate of purchase, and that it was left with the clerk for delivery to said Ferguson." The clerk does not recollect this transaction. The delivery of the certificate to the clerk for Ferguson ought to be held a good delivery, although the purchaser never took it from the hands of the clerk. However, it is most probable that he took it into his own possession. Assuming that a certificate of purchase was issued to Ferguson, its absence is sufficiently accounted for, although we do not think it necessary to go into a detail of the evidence showing its probable loss. If no certificate of purchase was actually delivered to Ferguson, then the

evidence shows such a case as would take the sale out of the statute of frauds, if we shall find that the purchase-money has been paid. This, therefore, will be the next question considered. No witness swears positively to the payment of the note given for the purchase-money, but the proof of that payment depends wholly upon circumstantial evidence. We have already seen, that thirty years ago a note for the purchase-money was executed and delivered to the county commissioners, with Joel Johnson as security. The amount of this note was about $150, payable in four equal semi-annual instalments. The testimony shows that the note must have been placed in the hands of the county treasurer, who was instructed to collect the notes as they fell due; that the county was, for many years after the sale, very much embarrassed, and greatly in need of funds to pay her ordinary expenses and for the erection of public buildings; that Johnson, the security on the note, has ever since lived in the county and near the county seat, and is well known to the officers of the county; that he has during the whole time been perfectly responsible, and he says he has never been called upon to pay the note. The note is not now in the possession of the county, or at least it fails to produce it, nor does it in any way account for its absence. In view of all these circumstances there is but one inference, and that is, that Ferguson paid the note, and probably as it fell due. The bare non-production of the note by the county would be sufficient, unexplained, to raise the legal presumption, that the note had been collected or put in circulation. It would be most unreasonable indeed to require of the complainants to produce stronger proof of payment than they have spread upon this record. According to the ordinary course of business transactions, Ferguson, when he paid the note, took no receipt, but merely took up his paper; and it is a very rare occurrence where we find a man who preserves his notes which he has paid; and consequently no positive proof of the payment could be expected, unless the treasurer, to whom the payment was probably made, should fortunately recollect it, after a lapse of near thirty years, and when there was nothing in the nature of the transaction to impress it upon, or keep it alive in, his memory. Even if Ferguson were alive and prosecuting this

suit, we could require no stronger proof of payment than we now have. And yet how much less strict should we be with the complainants, when we remember that their father died twenty-five years ago, leaving them very young, and residents of a distant State; that they have been under the charge of several guardians, appointed from time to time by foreign tribunals, into and through whose hands a portion of their father's papers passed; that their mother was twice married after their father's death, and that she has now been dead for several years. All these circumstances serve to explain how it is that no papers in relation to this transaction can now be found, and afford a good reason for saying that the complainants should not be held to as strict proof of payment as would be required were the original party to the transaction living and acting. This, too, shows an abundant reason why this claim has laid so long dormant. The simple question is, has the money been paid, or is it still due the county from the estate of Ferguson, or Johnson the security. Suppose this were a suit prosecuted by the county for the recovery of the amount due upon the note, could it be pretended for a moment that the county could recover, in the face of all these circumstances tending to show that it has been paid, and without producing the note or accounting for its absence? Such a thought would not be entertained for a moment by any one. There is also a satisfactory explanation given why nothing of this payment is found in the records of the county. All of the county officers who have been sworn testify that no record whatever of any of those sales was made by the County Commissioners' Court, or in the treasurer's office, of the payments of the notes given at the sales. If these records do not show other sales which were effected, and other payments which were made, it is not remarkable that they are silent on the subject of this transaction. That such record should properly have been kept, there can be no doubt; but the proof shows positively that they were not, and for the reason that it was not then supposed to be necessary. We must take things as they are, and have regard to the mode in which business was then done. We cannot certainly, after this long lapse of time, be called upon to say, that because of the informal manner in which the county business

was transacted and the records kept, no rights were acquired and no obligations incurred. We cannot say, that those who parted with their money in good faith, and of which the county has enjoyed the benefit, acquired no rights, of which the judicial tribunals will take notice and enforce.

We have no hesitation in finding, that at a public sale of property belonging to the county held in 1819, in pursuance of an order of the County Commissioners' Court, the ancestor of the complainants purchased the premises in question; that he complied with the condition of such sale by giving his note for the purchase-money, with approved security, which was accepted by the proper county authorities, and which note was duly paid; that he, or those claiming under him, took possession of said property under the sale, made valuable improvements thereon, and have held and continued such possession until the commencement of this suit; and, the whole of the purchase-money having been paid, this entitles the complainants, who are the only heirs at law of the original purchaser, to a conveyance of the property, whether a certificate of purchase was ever delivered to Ferguson or not. In this we find that the Circuit Court decided correctly. The court, however, erred in awarding costs against the county commissioners personally. The county was the defendant in the suit; and if costs were to follow the decree, they should have been adjudged against the county. That portion of the decree which relates to costs must, therefore, be reversed, which imposes the duty upon this court of disposing of the question of costs, as we think the Circuit Court should have done in the exercise of a sound discretion. The county acts through its officers, and is not, like an individual, bound to remember ancient transactions, unless disclosed by its records. The present commissioners may well have been justified in resisting a claim of which they found no evidence on their records, and which should properly have appeared there. Indeed, they may not have been justified in making a conveyance, under the circumstances of this case, except in obedience to the decree of a competent tribunal. Nor can we say that the appeal was vexatiously prosecuted. Upon consideration of the whole case, we are of opinion that the parties respectively should pay the

costs made by them in the Circuit Court; and that the costs of this court be equally divided between them. The decree to this extent will be modified here. In all else it must stand affirmed.

*Decree affirmed.*