# GURDON HEWITT *et al.*

*v.*

# CHARLES DEMENT *et al.*

1. AMENDMENTS *of bill in chancery—when allowable.* As a general rule, amendments to the pleadings in chancery are in the discretion of the circuit court, and, when permitted for the furtherance of justice, the opposite party can not be heard to complain unless he can show his substantial rights have been prejudiced thereby.

2. In this case the complainant was allowed to so amend his bill upon the argument of the cause as to adapt the pleadings to the proofs of the defendant already in. There being obviously no delay occasioned, and it not appearing the defendant was in any manner surprised thereby, the amendment was regarded as properly allowed. The 34th section of the chancery act provides that the circuit courts, when sitting as courts of equity, may permit the parties to amend their bills, petitions, pleas, etc., on such terms as the court may deem proper, so that neither party be surprised or delayed thereby.

3. USURY—*principle on which it is allowed as a defense.* Usurious transactions, from the actual or presumed disparity of condition between the parties, the borrower being generally controlled by a necessity which places him measurably within the power of the lender, have ever formed an exception to the general rule that parties shall be deemed *in pari delicto,* when they intentionally participate in the violation of law, the borrower being regarded as under such constraint of circumstances, such moral duress, as to take from him the character of *particeps criminis.*

4. SAME—*parol evidence allowable.* In regard to transactions alleged to be usurious, parol evidence is admissible, in equity, to vary or contradict written contracts, for the purpose of showing their real character, and it has been held admissible to show by parol that a contract in the form of an absolute sale, was but a security for an usurious loan.

5. SAME—*what constitutes usury.* In this case, a loan for $5000, was negotiated, and a note given to the lender for that amount, with ten per cent interest, the money not being paid to the borrower at the time, however, but the lender gave him a letter of credit authorizing the borrower to draw on him for the sum mentioned in the note whenever it should be made satisfactorily to appear that the security offered was sufficient. The borrower received only $4500 of the amount, and it was understood he was to receive no more, the deficiency being represented by a draft drawn by the borrower and delivered to the lender at the time the note was given, and which was never paid. The transaction was held to be usurious, the draft mentioned having been given to cover its real character.

6. ACCOUNTS—*should be referred to the master.*  Questions arising out of matters of account, unless there has been a reference to a master to take and state the account, and the proper exceptions taken before him and in the court below, will not be considered by this court.

WRIT OF ERROR to the Circuit Court of Stephenson county; the Hon. BENJAMIN R. SHELDON, Judge, presiding.

Messrs. THOMAS J. TURNER & SON, for the plaintiffs in error.

Mr. WILLIAM BARGE, for the defendants in error.

Mr. JUSTICE MCALLISTER delivered the opinion of the Court:

This was a bill in equity, filed by defendants in error, in the Ogle county circuit court, against plaintiffs in error, which, in substance, was to restrain the sale of certain real estate which was about to take place under and by virtue of a power of sale contained in a trust deed upon the lands of Charles Dement, which deed had been executed to a trustee to secure Gurdon Hewitt, senior, for moneys loaned by him to said Charles Dement. The ground upon which it was sought to restrain the sale was, that the trustee was proceeding to sell for more than was legally or equitably due said Hewitt, for the reason, among others, that a considerable sum should be deducted for usury in said loans. The bill prayed that an account might be taken between the parties to the transaction out of which the security arose, was verified by oath, but waived the necessity of an answer under oath. Answers were filed, which are very full and voluminous. The cause was brought to issue by replications, and the venue thereof changed to Stephenson county, where it was heard upon pleadings and proofs, the amount due to Hewitt ascertained, and a decree accordingly, and enjoining the residue.

502 HEWITT *et al.* v. DEMENT *et al.* [Sept. T.,

Opinion of the Court.

The defendants below bring the record to this court by writ of error. The errors relied upon for reversal are: first, in permitting amendments of the bill; second, in finding the issue as to usury in favor of complainants, and third, in respect to items and the results of the account between the parties.

Was there error in allowing amendments, for which the decree should be reversed? Three amendments were made, the last of which was upon the argument of the cause.

The whole subject is covered by the statute. The 34th section of the chancery act (R. S. 1845, 97) declares that circuit courts, when sitting as courts of equity, may permit the parties to amend their bills, petitions, pleas, answers and replications, on such terms as the court may deem proper, so that neither party be surprised or delayed thereby. Here there was obviously no delay occasioned by the amendment, and we are unable to see that plaintiffs in error were surprised thereby. The amendment was not made for the purpose of adapting the pleadings to complainants' proofs, but to that of the defendants' already in. If they were surprised by the amendment, they have certainly failed to show how or wherein.

In *Jefferson County* v. *Ferguson et al.* 13 Ill. 33, four amendments were allowed to the bill, two of which were permitted after the case had been argued, and while it was under advisement in the court below. The permitting of these amendments was assigned for error. The court said: · " We do not think that the decree should be reversed for this cause alone. As a general rule, these amendments are in the discretion of the circuit court, and when admitted for the furtherance of justice we ought not to listen to the objection, unless the party can show that his substantial rights have been prejudiced by the amendments which have been allowed." See also *McArtee* v. *Engart,* 13 Ill. 250; *Moshier* v. *Knox College,* 32 Ill. 163; *Mason et al.* v. *Bair,* 33 Ill. 199; *Farwell* v. *Meyer et al.* 35 Ill. 51; *Marble* v. *Bonhotel,* 35 Ill. 240; *De Wolf* v. *Pratt et al.* 42 Ill. 198; *Craig* v. *The People ex rel.* 47 Ill. 487. We

are of opinion there was no error in permitting the amend-
ments.

The second assignment of error relied upon is, that the court
erred in finding that there was usury in the note of $5,000
given Sept. 28th, 1852.

This assignment of error involves the principal question
arising upon the evidence, which has been discussed by counsel.
We have carefully weighed the evidence, and come to the con-
clusion that it sustains the finding of the court below.

There are few instances of the violation·of law, falling under
the scrutiny of courts, which have summoned to their aid so
many ingenious devices to conceal their real character, as those
of the laws against usury. These instances, from the actual
or presumed disparity of condition between the parties, the
borrower being generally controlled by a necessity which
places him measurably within the power of the lender, have
ever formed an exception to the general rule that parties shall
be deemed *in pari delicto,* when they intentionally participate in
the violation of law ; because the borrower is regarded as being
under such constraint of circumstances, such moral duress, as
to take from him the character of *particeps criminis.* From
these considerations has arisen a sort of policy of the courts,
which has dictated the duty of exercising a high degree of
scrutiny and astuteness, in respect to transactions alleged to
be usurious. To that end, rules of evidence, firmly established
as to other classes of cases, are made to yield to the searching
investigation and stern inquisition demanded by that policy.
Parol evidence is admissible to vary or contradict written
contracts, or to show that a contract in the form of an absolute
sale, was but a security for a usurious loan. *Ferguson* v. *Sut-
phen,* 3 Gilm. 547.

The arrangement for the loan of the $5,000 in question,
was made at Dixon, Ill. on the 28th of September, 1852. It
was made between Gurdon Hewitt, senior, and Charles De-
ment, both of whom were witnesses in the case. In the prin-
cipal features of that arrangement they both concur. A note

504      Hewitt *et al. v.* Dement *et al.*      [Sept. T.,

Opinion of the Court.

to Hewitt for $5000, bearing that date, was drawn up by him and signed by Charles and his brother, John Dement, whereby they agreed to pay Hewitt that sum, payable in installments as follows: $1700 in three years, the same sum in four years from date, and the balance of $1600 in five years from date; all to draw interest at the rate of ten per centum per annum. Both principal and interest were payable in the state of New York. The instrument recited, that it was given for money borrowed of Hewitt at Dixon, and provided that upon any default as to principal or interest the whole should thereupon become due. The agreement also was, that Charles Dement and wife should execute a deed of trust upon certain lands situate in Ogle and Lee counties, Ill. to secure the note. Hewitt prepared this deed and it was executed. Then, as Hewitt lived in Owego, Tioga county, in the state of New York, and was obliged to return home immediately, and, as he, as yet, had caused no examination to be made of the title to the lands on which the security was to be given, it was agreed that he would give the Dements a letter of credit authorizing them to draw on him for the sum of $5000, orders payable at sight, which authority was made conditional that Dement would get the trust deed recorded, or, if the one made was in any way imperfect, to make a new one; to get the proper certificates of title and that there was no incumbrance on the land; and William W. Heaton's certificate that the matter was all legally and rightfully done to secure the said loan, and send the papers to Hewitt. " *When,*" the letter concludes, " I will pay as above stated on reception of the papers." This instrument bears date, Dixon, Sept. 28th, 1852. Hewitt then left for home. Charles Dement proceeded to have the trust deed recorded in Ogle and Lee counties, for which he paid $2.50. He obtained the certificates required by the conditions of the letter of credit, and caused them to be forwarded to Hewitt at Owego, New York. He testifies that he never received but $4500 of that loan purporting to be $5000, and that it was the agreement at the time that he was to receive

but that sum.   That the way in which Hewitt obtained the voucher for the whole sum was this :   At the time the note and trust deed were drawn at Dixon, on the 28th of September, 1852, Hewitt required that a draft for $497.50 be drawn by the Dements upon him, in favor of Charles Dement, which was accordingly done, and the instrument then and there delivered to Hewitt.   The amount of this draft, together with the $2.50 to be paid by Charles to get Hewitt's trust deed recorded, was, as Charles Dement testifies, to make up the difference between the $4500 and the face of the note. Dement swears positively that Hewitt, neither at the time this draft was drawn and handed to him, nor at any other time, ever paid him, or anybody else for him, anything on account of that draft.   If this draft was, in fact, drawn and delivered at that time, as Dement testifies, why was it done?   Upon what theory can so peculiar a fact be accounted for, except upon the hypothesis that it was to furnish Hewitt with the means of covering the usurious character of the loan?   It was well understood by the parties that no money was to be advanced at that time.   The letter of credit was upon conditions, which if complied with at all, could not be without the lapse of considerable time.   Hewitt does not pretend in his testimony that he paid Dement, or any body for him, anything on account of that draft at the time he received it; nor does he deny that he received it at that time.   On the contrary, he admits having it, attaches to his deposition a copy of it which bears the same identical date as the letter of credit.   This fact supports the evidence of Dement, and shows conclusively that the draft was drawn and handed to Hewitt at the same time of the other papers alluded to.   Dement was pressed for money, but why should he do so absurd and unbusinesslike a thing as to make and deliver this draft to Hewitt at this time, if he ever expected to get anything on account of it, more than as a means of consummating the loan of $4500, for which he was to give his note secured by trust deed, for $5000, at ten per cent interest per annum?   Nor can it be said that the draft was

given on account of some other matter. Its very terms make it relate to this, and no other transaction. It is as follows:

" GURDON HEWITT, Esq.:

Pay to the order of Charles Dement, $497.50, and charge to us *on account of $5000, and for which you have this day authorized us to draw on you, for this.*

" CHARLES DEMENT,<br>JOHN DEMENT."

"DIXON, ILL. September 28th, 1852.

Here is another extraordinary feature : By the terms of the letter of credit, Hewitt was to pay nothing upon it until the papers were sent to him, comprising certain certificates that might never be obtained. Until these were obtained and sent, the letter of credit was inoperative, and there was no authority to draw which would have made a draft good even in the hands of a holder acting on the faith of the letter. Why waive the conditions in respect to this particular draft? No reason has been assigned; no explanation offered of this strange proceeding.

We assume it to be true, therefore, that this draft was drawn and handed to Hewitt on the day of its date, and that he took it away with him without advancing the amount of it. If so, then when, how, and to whom did he afterwards pay it? As he lived at Owego, New York, and the Dements at Dixon, Illinois, Hewitt could have paid it only by accepting and paying some subsequent draft for a like amount, by sending the money or some check, or bill, by mail or express, or by delivering the same to Charles Dement personally. He is able to state specifically how and when and to whom he paid the other drafts, which were drawn after the papers were completed and sent, for the $4500; but none of which were drawn until the following November. But, as to that in question, he vouchsafes no explanation. He simply produces a copy, and says he accepted and paid it. If this statement were true in the sense in which he meant the court should understand it, why could he not state, when, how, and to whom it was paid, as he

did in regard to the others? Dement's evidence is corroborated, and his theory of the transaction sustained by circumstances which are established beyond doubt; while Hewitt does not fairly meet the facts which these circumstances press him to answer. A general denial of the usury, or a general statement that he had accepted and paid the draft of the 28th of September, without any explanation of the extraordinary fact of its coming into existence in the manner stated, or how, when, or to whom it was paid, will not suffice to overcome facts and circumstances which lead unerringly to the conclusion of usury.

It is conceded by counsel, that if this loan was usurious, the court below proceeded upon the right principle in ascertaining the amount due, but erred in some of the details of the process. There was no reference to a master to take and state the account between the parties. Their transactions were not limited to the particular loan under consideration, but afterwards extended not only to subsequent dealings in reference to that, but to other moneyed transactions, and all of a complicated nature.

The counsel ask us to perform the duties of a master in chancery, and take and state the account between these parties. They have presented the account according to their views, covering eleven printed pages, and being complex and intricate in its nature. A complex and intricate account is not a fit subject for examination in court, and the practice established for the convenience of courts shields us from the imposition of any such duty. If parties desire to reserve questions arising out of matters of account, they must have a reference to a master to take and state the account, and take the proper exceptions before him, and in the court below. *Brockman* v. *Aulger et al.,* 12 Ill. 277.

The decree of the circuit court is affirmed.

*Decree affirmed.*

Mr. JUSTICE SHELDON having decided the case below, took no part in the decision.