FLOYD K. WHITTEMORE

*v.*

DAVID S. FISHER, Admr.

*Filed at Springfield March 31, 1890.*

132 243
54a 161
55a 413
132 243
164 148
132 243
169 501
132 243
174 493
132 243
82a 143
132 243
190 10175
132 243
204 10640
132 243
112a 224

1. MORTGAGE—*deed absolute in form—parol evidence.* A deed purporting on its face to transfer an absolute title to real or personal property, may be shown, by parol evidence, to be only a mortgage or security for a debt; but slight, indefinite or unsatisfactory evidence will not be permitted to change its character. That can be done only by proof which clearly shows that the intention of the parties was that the transaction should be a mortgage, and not a sale.

2. Facts and circumstances in this case stated, from which the court finds a deed for real estate, and a bill of sale for a lot of jewelry and goods, absolute in form, given by a debtor to his creditor, was in fact only a security or mortgage, and not an absolute sale, with a privilege of the grantor to repurchase.

3. CHATTEL MORTGAGE—*right of possession in mortgagee—on default in payment.* Where a deed absolute in form, or bill of sale for goods, is given as a security for the payment of a debt, the creditor, on default of payment when the time of credit expires, will be entitled to the possession of the goods.

4. SAME—*where the time of payment is indefinite—when the right of possession accrues.* Where the instrument of transfer is given to secure a debt already due, and no definite time is fixed when the debt shall be paid, or how long the mortgagor may retain possession of the goods, the credit will run only during the pleasure of the mortgagee, and he will be at liberty at any time to terminate it and take possession of the property, and on demand and refusal he may obtain possession by replevin.

5. SAME—*mortgagee in possession—how he may dispose of the property.* In case the holder of a bill of sale of goods given to secure a debt, after default takes possession thereof, his title to the property in law becomes absolute, and he will be at liberty to convert it into cash by sale, or by foreclosure in equity, and if found insufficient to pay the amount due, to resort to the mortgagor for the deficiency.

6. But the mortgagee of chattel property, on reducing it to possession, is not bound to foreclose or sell. He may treat the property as his own, subject only to the mortgagor's equitable right of redemption; and his election to hold the property will be treated as a satisfaction

of his debt, at least to the extent of the value of the property at the time he took it into possession. If he intends to sell or foreclose, he must exercise his right to do so within a reasonable time, or he will be chargeable with the full value.

7. SAME — *bill to redeem—allowance to mortgagee for expenses, etc.* On bill for the statement of an account between a mortgagor and mortgagee, and for redemption from the mortgage, the mortgagee was charged with the cash value of a stock of jewelry and goods, which he took into possession on default as his own property, and was required to deliver all of the same he had not disposed of, to a receiver: *Held,* that he was entitled to credit for the value of the goods so turned over by him to the receiver, but not for money paid out by him for salaries and incidental expenses in carrying on the business of selling such goods on his own account.

8. EVIDENCE—*to show value of chattels—in the hands of mortgagee.* Where a mortgagee of a lot of jewelry, etc., on taking possession by replevin against the mortgagor, not only neglected to have any inventory or invoice of the same taken, but refused to allow the mortgagor to complete one he had commenced to take, it was *held,* that such conduct on the part of the mortgagee afforded inferences upon the question of the value of the goods unfavorable to him, and authorized the introduction of a less satisfactory evidence of their value.

9. CHANCERY—*reference to master—re-stating account without re-reference to master.* Where the court disallows certain items of credit in an account stated by the master, and supplies a deficiency in the report by computing interest on the indebtedness found, it is proper to refer the matter back to the master to restate the account. But such a course is not imperatively required. The court may restate the account without the further intervention of the master, when the case does not involve intricate and complex accounts.

10. If a party desires to have a further or second reference of a cause to a master for any purpose, he should enter his motion at the proper time for such reference, in order to raise that question on appeal or error. If he appears and takes part in the proceedings, and makes no objection to the court re-stating an account, and does not ask to have the matter referred back to the master, he will not be permitted to raise the objection for the first time in this court that the court re-stated the account without such a reference.

APPEAL from the Circuit Court of Sangamon county; the Hon. JESSE J. PHILLIPS, Judge, presiding.

Messrs. CONNOLLY & MATHER, and Mr. S. D. SCHOLES, for the appellant:

The court erred in not referring the case back to the master to re-state the account according to such rule as the court might make. *Beale* v. *Beale*, 116 Ill. 292; *French* v. *Gibbs*, 105 id. 528.

The finding of the court of the state of the account is erroneous. The sale was absolute, and not by way of mortgage.

Where parties deliberately give a transaction all the forms of a sale, slight, indefinite or unsatisfactory evidence should not be permitted to change its character. It should only be by proof which clearly shows that the intention of the parties was that it should be a mortgage, and not a sale. *Dwen* v. *Blake*, 44 Ill. 139; *Price* v. *Karnes*, 59 id. 285; *Clark* v. *Finlon*, 90 id. 245; *Taintor* v. *Keys*, 43 id. 332; *Smith* v. *Cremer*, 71 id. 185; *Magnusson* v. *Johnson*, 73 id. 156; *Bentley* v. *O'Bryan*, 111 id. 62; 3 Pomeroy's Eq. Jur. sec. 1196.

At the very most, it could only be said to be a "sale with an agreement to re-purchase," which is something very different from a mortgage, either legal or equitable, as it carries with it to the seller no right of redemption. 1 Hilliard on Mortgages, chap. 5.

Messrs. PATTON & HAMILTON, Messrs. PALMER & SHUTT, and Mr. I. K. BRADLEY, for the appellees:

Counsel can not object that the case was not re-referred to the master, for the reason it was understood and agreed on the trial that the matter should be heard by the court.

The deed and bill of sale given by Fisher, in equity, is only a mortgage. The character of the transaction may be shown by parol, and by circumstances and declarations of parties. *Fitch* v. *Wetherbee*, 110 Ill. 475; *Miller* v. *Thomas*, 14 id. 428; *Lowe* v. *Graff*, 80 id. 360; *Wright* v. *Gay*, 101 id. 233.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

This was a bill in chancery, brought by Abraham H. Fisher against Floyd K. Whittemore, for the appointment of a receiver to take possession and dispose of a certain stock of goods, consisting of jewelry, musical instruments and other merchandize, then in possession of said Whittemore, and for an accounting. The circumstances out of which the controversy arose are as follows: For a number of years prior to February 26, 1883, Fisher had been dealing in jewelry and musical instruments in the city of Springfield, and had been doing his banking business to a large extent with the State National Bank of Springfield, of which said Whittemore was the cashier. At that date Fisher was indebted to the State National Bank in the sum of nearly $15,000, for which said bank held his judgment notes then past due. At the same time he was indebted to the Farmers' National Bank of Springfield in the sum of about $3300 for which that bank also held his judgment note.

In the afternoon of February 26, 1883, the Farmer's National Bank caused a judgment to be entered against Fisher on its note, and in the evening of that day Fisher called on Whittemore and informed him of the entry of said judgment, and applied to him for assistance in paying it off so as to prevent a levy and sale of his stock of goods. Fisher brought with him a satchel containing a quantity of jewelry and diamonds which he represented to be worth at least $5000, and which the evidence shows were in fact worth more than that sum, and offered to deposit the same with Whittemore as security for the money to be advanced. As a result of the interview, Whittemore agreed to and did advance a sufficient sum of money to purchase said judgment, taking an assignment thereof to himself, and also accepting from Fisher the satchel and contents as collateral security for the money advanced, and depositing it in the bank vault.

On the day following, the State National Bank caused a judgment to be entered in its favor against Fisher upon the notes held by it, said judgment being for $14,898.05, and had execution issued thereon, and at the same time Whittemore, as assignee of the judgment in favor of the Farmers' National Bank, caused an execution to be issued on his judgment, and both executions were delivered to the sheriff and levied upon Fisher's stock of goods. Fisher thereupon executed a general assignment of his property for the benefit of his creditors, and his assignee duly qualified and entered upon the execution of his trust. An inventory of the property assigned, and also a schedule of Fisher's liabilities, having been filed, it was thought to be more advantageous, both for Fisher and his creditors, that an attempt should be made to compromise said indebtedness in such way as to have the business continued and the stock of goods sold in the regular course of trade. The way in which this was proposed to be accomplished was, for Whittemore to advance or guarantee the payment of the money which would be required to pay off the two judgments, and to compromise the other indebtedness on such terms as Fisher might be able to make with his creditors, Fisher on his part to transfer all his property, both real and personal, to Whittemore.

In pursuance of this plan, Fisher caused a letter to be prepared and sent to his creditors, in which he represented to them the amount of his indebtedness, and also the amount, value, condition and availability of his assets, in such manner as to show a large deficiency of assets, and offered to pay, by way of compromise, thirty per cent of all claims in cash within ten days, or, twenty per cent in cash within twenty days and an additional fifteen per cent within sixty days, the deferred payments to be amply secured. Fisher's efforts resulted in a compromise with a large proportion of his creditors, and Whittemore, in addition to paying off the two judgments, paid or guaranteed to the creditors compromised with about $30,000.

The indebtedness guaranteed was afterward paid by him. A majority of the creditors who had proved up their claims in the County Court having consented in writing to have the assignment proceedings discontinued, that was done, and the assignee conveyed and assigned the property in his hands back to Fisher.

On being reinvested with title, Fisher, on the 21st day of June, 1883, executed a deed, absolute on its face, by which, in consideration of one dollar and other good and valuable considerations, he conveyed to Whittemore his real estate, consisting of lots one, two, three and the east half of lot four, block three, in Edwards & Mather's addition to the city of Springfield, said real estate being then subject to a mortgage for $10,000, which, by the terms of the deed, Whittemore assumed. Fisher also, on the same day, executed and delivered to Whittemore an instrument by which he bargained and sold to Whittemore said stock of goods, together with all the furniture, fixtures and personal property in the store in which said stock of goods was situated, the consideration expressed in said instrument being "one dollar and other good and valuable considerations," and said instrument purported on its face to vest in Whittemore an absolute title to the goods thus bargained and sold to him.

Upon the execution of said papers and as a part of the arrangement under which they were executed, Fisher took possession of said stock of goods and commenced carrying on the business under the name of "A. H. Fisher, Agent," and it was agreed between him and Whittemore that he should manage and have the general oversight of said business, employ and discharge salesmen and other employes, buy new goods from time to time as it should become necessary; that he should deposit all the proceeds of sales in the State National Bank, but was at liberty to withdraw from said proceeds sufficient money to pay his current personal expenses, the expenses of the business and the cost of new goods, and that when Whit-

temore should receive from the business enough money to re-pay him all his advances with eight per cent interest, he should turn over to Fisher the residue of the property remaining un-disposed of.

The business was carried on under this arrangement until October 10, 1884, when certain of the creditors of Fisher whose claims had not been compromised, filed their bill against Fisher and Whittemore and obtained an injunction restraining them from selling said goods or paying out any moneys arising therefrom, until their claims should be paid. Whittemore thereupon paid out $6900 more in settlement of the claims thus presented, and the business was continued by Fisher as before until December 20, 1884. At that time Whittemore, as he claimed, had received the amount of his advances and interest only in part, and being dissatisfied with the manner in which Fisher was conducting the business, he demanded of Fisher a surrender to him of said stock of goods and business, and upon Fisher's refusal to comply with such demand, he brought his suit in replevin against Fisher and replevied from him said goods, and thereafter excluded him from possession thereof. After the execution of the replevin writ, Whittemore continued to carry on the business himself, employing, gen-erally, the same salesmen and employes who had formerly been employed by Fisher, and conducting the business in substan-tially the same manner it had been carried on by Fisher.

On the 21st day of April, 1885, Fisher filed the bill in this case, alleging that his sale to Whittemore was only by way of mortgage as security for his advances; that said advances had been fully paid at the time the goods were replevied, and that the replevin therefore was wrongful, and praying for an award of damages for such wrongful seizure of said goods, for a re-turn of said personal property and a reconveyance of said real estate, for an accounting and a decree against Whittemore for the amount found due from him to Fisher, and for a receiver to take charge of said stock of goods and carry on the business

pending the litigation. A receiver was appointed, who continued the business until May 5, 1886, when, in pursuance of an order of court, he sold said stock of goods at public auction to the highest bidder and closed out the business. At that sale Whittemore became the purchaser, his bid being $16,685.11, and for that sum he executed to the receiver his promissory note.

Whittemore, the defendant, answered, insisting that the conveyance of said real estate and the sale of said stock of goods by the complainant to him were absolute, and not as security for any indebtedness or advances made or to be made by the defendant for the complainant; that the management and control of said stock of goods and business by the complainant after said sale was merely as the agent of the defendant; that after said sale it was arranged between the defendant and complainant that the complainant should manage said business as agent for the defendant, and sell said merchandize as expeditiously as possible, and deposit all the moneys received therefrom in the State National Bank as fast as received, and that for managing said business as agent the complainant should be allowed to withdraw or withhold such sums of money as should be necessary to pay the operating expenses of the business, and afford himself a reasonable support, and when he should thereby reimburse the defendant for his advances and liabilities in full, with interest at the rate of eight per cent per annum, the defendant would give the complainant the residue of said property, if any, as further compensation for said management of said business as the defendant's agent.

At the hearing the court held that said deed and bill of sale from Fisher to Whittemore were both in fact executed by way of mortgage to secure to Whittemore the repayment of the several sums of money advanced by him as aforesaid, and the master, on reference to him to state the account between the parties, made a report in which he found that the total money paid and advanced by Whittemore up to December 20, 1884,

the date of the replevin suit, was $68,920.86, and the total amount of money received by him from Fisher during the same period was $33,188.37, thus leaving a balance due Whittemore at that date of $35,723.49. The master's report of the account from the date of the replevin suit to the time of the appointment of the receiver, including the general balance, was as follows:

Collected from sales - - - - - - - - - - - $10,907.85

Collected from former accounts and notes at store 1,294.93

Collected from former accounts and notes at bank 2,307.10

Making a total of - - - - - - - - - $14,539.88

Paid out during same period goods

   bought at store - - - - - - - - $1,283.56

Goods bought at bank - - - - - 1,764.27

Rent - - - - - - - - - - - - 1,400.00

Incidental expenses - - - - - - 641.03

Insurance and taxes - - - - - - 696.46

Salaries and at store - - - - - - 4,839.84

Making a total - - - - - - ——————— 10,625.16

Leaving receipts above expenditures - - - - - $3,914.72

Making account stand, indebtedness Dec. 20, 1884,

   subject to interest - - - - - - - - - $35,732.49

Net receipts from Dec. 20, 1884, to Aug. 7, 1885 - 3,914.72

Making amount due Aug. 7, 1885, subject to

   interest - - - - - - - - - - $31,817.77

As will be seen by the foregoing, the master made no computation of interest, and no finding upon the question of damages claimed by Fisher for the wrongful suing out of the replevin writ. Pending the proceedings Fisher died; and his legal representatives appeared and filed a supplemental bill, which was duly answered by the defendant, and the cause coming on for final hearing on pleadings, proofs and the master's report, the counsel for both parties requested the court to determine said question of damages without a further

reference to the master or a submission of that issue to the
jury. The court thereupon held that the complainants were
not entitled to damages for wrongfully replevying said goods,
and thereupon proceeded to restate the account between the
parties as follows:

STATEMENT OF ACCOUNT—WHITTEMORE'S CREDITS.

| | |
|---|---:|
| By moneys paid out by him from June 21, 1883, to Dec. 20, 1884 - - - - - - - - - - - | $68,920.86 |
| For interest on balance due Whittemore from June 21, 1883, to December, 1884 - - - - | 4,287.88 |
| By new purchases during the time he held goods under the replevin writ - - - - - - - - | 3,047.83 |
| For rent paid out by Whittemore - - - - | 1,400.00 |
| For taxes and insurance paid out by Whittemore | 696.46 |
| By amount of goods taken by Whittemore under replevin and afterwards returned to receiver - | 29,809.95 |
| Making a total of - - - - - - - - | $108,162.98 |
| The court finds that Fisher or his representatives are entitled to a credit for money paid by him and collected by Whittemore from June 21, 1883, to Dec. 20, 1884 - - - - - - - - | $33,188.87 |
| For money collected by said Whittemore on notes and accounts after replevin - - - - - - | 3,602.03 |
| Value of stock at time of replevin by Whittemore | 60,000.00 |
| Making a total credit of - - - - - - - | $96,790.90 |

The balance in favor of Whittemore as shown by said state-
ment was $11,372.08. The court refused to allow him in-
terest on said balance from the commencement of the replevin
suit to the appointment of the receiver, but computed interest
from the latter date to the date of the receiver's sale, the same
being $758.13, making a total of $12,130.21. This sum the
court ordered to be credited upon Whittemore's note for $16,-
685.11, given to the receiver for the goods purchased at the
receiver's sale, such credit to be in full satisfaction of all

indebtedness due said Whittemore under said deed and bill of sale, and Whittemore was ordered to pay said receiver $4554.90, the balance of said note, and interest thereon according to the terms of said note, within forty days from the date of said decree, and he was also ordered, within forty days from said date, to convey, by a quit claim deed, to the heirs of said Fisher, the real estate conveyed by said Fisher to him. From that decree Whittemore has appealed to this court.

The assignments of error present for our consideration the three following propositions:   1. that the court erred in not referring the case back to the master to restate the account; 2. that the statement of the account as made by the court is erroneous; and, 3. that the court erred in holding that the deed and bill of sale were not an absolute conveyance and transfer of said property to Whittemore, but were in fact given merely as security, in the nature of mortgages, for the indebtedness growing out of Whittemore's advances.

As to the first of these points, we are of the opinion that there is no error of which the complainant can now complain, in restating the account without further reference to the master. The only substantial differences between the statement made by the court and the one made by the master are these: 1. the court rejected the two items of credit allowed to Whittemore by the master for expenses incurred while he was carrying on the business, viz., $641.03 paid for incidental expenses, and $4839.84 paid for salaries; and, 2. the court, instead of charging Whittemore for the amount received by him for goods sold, viz., $10,907.85, struck out that item, and in place of it, charged him with the value of the stock of goods at the time it was replevied, and credited him with the value of the goods surrendered by him to the receiver.   As to all matters arising anterior to the replevin suit the court adopted the account as stated by the master.   The same is true of the master's statement of the account during the time Whittemore was carrying on the business himself, except as to the matters above men-

tioned. Beside this, the master having failed to compute interest on the indebtedness to Whittemore in accordance with contract between the parties, but reported the amount of said indebtedness "subject to interest," the court supplied the deficiency by making a proper computation of interest and crediting Whittemore with the same.

Assuming for the present the correctness of the theory upon which the court made these changes in the master's statement of the account, there seems to be nothing in the subject matter of those changes which rendered a further reference imperative. The elimination from the account of the two items of expenditure allowed by the master for salaries and incidental expenses could be made by the court as well as by the master. It would undoubtedly have been proper for the court to send the case back to the master and require him to find the value of the stock of goods at the time of the execution of the replevin writ, and the value of the goods surrendered to the receiver, and to modify the statement of the account upon the basis of such values, but we know of no rule of law which made it improper for the court to take upon itself the determination of such questions of value, and said values being found, the restatement of the account upon the basis of such findings was a very simple matter, which the court might well make without the further intervention of the master. We find nothing in the action of the court in this respect which can be held to be, in any material degree, violative of the general rule of chancery practice which requires a reference to the master to take and state the account in all cases involving intricate and complex accounts.

But if this were otherwise, it is difficult to see how the appellant can be permitted to take advantage of the error. The mode in which the account was finally stated was adopted with his tacit if not his express approval. He appeared, by his counsel, and took part in the proceedings without objection, and without asking to have the case referred back to the mas-

ter, and he ought not to be permitted to raise the objection for the first time in this court. If he desired to assign for error the failure of the court to order a further reference, he should have entered his motion at the proper time for such reference. As was said in *Hewitt* v. *Dement,* 57 Ill. 500, "If parties desire to reserve questions arising out of matters of account, they must have a reference to a master to take and state the account, and take proper exceptions before him and in the court below." In that case no reference had been applied for by the appellants and none had been had, and this court affirmed the decree and refused to re-examine the account for that reason.

But in this case the counsel for both parties seem to have joined in a request that no further reference should be ordered. The court, in its decree, recites, as we have already stated, that at the commencement of the argument on the final hearing, both counsel requested the court to find on the question of damages without a further reference to the master, or a submission to a jury. True, counsel, in making this request, seem to have had specially in view the complainant's claim for damages for wrongfully suing out the replevin writ, but if they desired a further reference for any purpose, they should not have entered an express request that none be had, and having done so, they can not successfully assign for error the action taken by the court at their request.

In discussing the second question raised by the assignments of error, viz., that the statement of the account as made by the court is erroneous, we shall assume that the court properly held the deed and bill of sale, though absolute on their face, to have been in fact intended only as mortgages. At the time the replevin suit was commenced, Whittemore had advanced and paid out for Fisher $68,920.26, and of that sum there remained due and unpaid, exclusive of interest, the sum of $35,-732.49. According to Whittemore's version of the transaction, the time within which Fisher was to carry on the business and out of the proceeds of sales pay Whittemore's advances and

interest, was limited to one year from the date of the bill of sale, while according to Fisher's testimony, no limit as to time was imposed. If then we accept Whittemore's statement as true, at the date of the replevin suit, the period during which the mortgage was to run had expired, and Whittemore was entitled to possession as mortgagee after condition broken. If Fisher's statement is true, the same result follows. The time during which the credit was given being indefinite, it ran only during the pleasure of the creditor, and he was at liberty at any time to terminate it and take possession of the property. Whichever view then we take of the evidence, Whittemore, at the date of the replevin suit, was entitled to demand possession of the mortgaged property, and upon non-compliance with his demand, to bring replevin and thus obtain possession. It follows that the replevin suit was rightfully brought, and that the court properly excluded the complainant's claim for damages for a wrongful seizure of said property by virtue of the writ in that suit.

Whittemore, after replevying the goods, occupied the position of a mortgagee of chattels in possession after condition broken, and, at law, his title to said chattels thereby became absolute. *Constant* v. *Matteson*, 22 Ill. 546; *McConnell* v. *The People*, 84 id. 583; *Simmons* v. *Jenkins*, 76 id. 479; *Durfee* v. *Grinnell*, 69 id. 371; Jones on Chattel Mortgages, sec. 699, *et seq.* After taking possession, he was at liberty to convert said goods into cash by sale or by foreclosure in equity, and if found insufficient to pay the amount due him, to resort to the mortgagor for the deficiency. But it was his duty to exercise the right of sale or foreclosure within a reasonable time after taking possession or not at all. He was not bound to exercise that right, but could hold the property and treat it as his own, subject only to the mortgagor's right of redemption in equity. But his election to hold the property must be treated as a satisfaction of his debt, at least to the extent of its value at the time he took it into his possession. *Case* v.

*Boughton,* 11 Wend. 106; *Stoddard* v. *Denison,* 38 How. Pr. 286; *Freeman* v. *Freeman,* 17 N. J. Eq. 44; *Ex parte Haake,* 2 Sawyer, 231; Jones on Chattel Mortgages, sec. 773.

The fact that Whittemore, on obtaining possession of said goods, elected to treat them as his absolute property is not and can not be disputed. He insisted then and insists now, that the original sale to him was absolute and not by way of mortgage, and when he brought the replevin suit, he claimed the goods as owner and not as mortgagee. Accordingly, after obtaining possession, he used them as his stock in trade in carrying on the mercantile business, and continued that business for seven and one-half months, disposing of large quantities of said goods in the ordinary course of business at retail, and replenishing said stock to some extent by purchasing new goods. During that whole period, no attempt was made to dispose of said goods at a mortgagee's sale, either under a decree of a court of equity or otherwise, and no suggestion was heard of any intention to dispose of them in that way. If then, as we are now assuming, his rights were only those of a mortgagee in possession after the maturity of his mortgage, he was, upon the principles above stated, properly and clearly chargeable with the actual cash value of said goods at the time he took possession.

The court found the value of the stock of goods at that time to be $60,000, and it is urged that such finding is unsupported by the evidence. It is a noticeable fact, and one which is entitled to its legitimate weight in determining this question of value, that Whittemore, on taking possession, entirely neglected to have any inventory or invoice of said goods made, and none seems to have been made by Fisher for many months previous. At the time the replevin writ was served, Fisher was in the act of taking an invoice, but Whittemore refused to permit him to retain possession until it was completed, or to have access to the goods for the purpose of completing it afterwards. It thus appears that the most usual and satisfactory means of

ascertaining and preserving evidence of the amount and value of the goods in said stock is wanting. The omission of Whittemore to have an invoice taken, and his refusal to allow Fisher to take one are circumstances from which inferences upon the question of value unfavorable to him fairly arise.

In the absence of an inventory, the parties were necessarily compelled to resort to evidence of a character less exact and satisfactory. This evidence consisted mainly of the testimony of witnesses who were acquainted with the stock of goods at and before the time of the service of the replevin writ, and were most familiar with the amount, character and value of the goods composing it, and who gave their opinion of its value. Without attempting to analyze their testimony or to recapitulate it in detail, it is sufficient to say, generally, that six witnesses, including Fisher himself, testified on behalf of the complainant, giving their opinion as to the value of the goods replevied, most of whom had been employed in said store and were familiarly acquainted with said goods, and the value found by the court is as low as the lowest estimate placed upon said goods by said witnesses, the estimate of most of them being considerably higher. One or two witnesses testified on behalf of the defendant placing their estimate much lower, and a like result is sought to be obtained by adding to the estimated value of said stock of goods at the date of the bill of sale, the amount of goods purchased by Fisher while he was conducting the business and deducting therefrom the amount of his sales. Of course under the circumstances a precisely accurate result was impossible. The best that could be done was to approximate the true value in the light of the most satisfactory evidence attainable. After duly considering the evidence and the suggestions submitted by counsel, we are unable to say that the conclusion reached by the court below is not correct, or that it is not the fair and proper result of all the evidence in the record bearing upon the question.

The bill in this case was in the nature of a bill to redeem, and it prayed for an accounting and a surrender by Whittemore to a receiver of the goods remaining in his hands undisposed of. In conformity with this prayer, a receiver was appointed, and Whittemore was required to turn over to him the goods remaining on hand, and the value of the goods surrendered, as appears from the receiver's invoice, was $29,-809.95. For this sum Whittemore was clearly entitled to credit in the statement of the account. As he had been charged with their value at the time he replevied them, it was but equitable that he should be credited with the value of such as he was thus compelled to surrender. The court also credited him with such moneys as he had paid for taxes, insurance and rent, and as no question is raised as to the propriety of those credits, we pass them without discussion. It is clear, however, that the items consisting of moneys paid by Whittemore for salaries and incidental expenses in carrying on the business were properly disallowed. These were expenditures incurred by him on his own account and in his own business, and with which Fisher had nothing to do; and there was no propriety in charging them to him. They were incurred by Whittemore in selling or otherwise disposing of that portion of the goods replevied which had passed out of his hands before the appointment of a receiver, and as he was chargeable with the value of said goods and not with their proceeds, it seems to be quite immaterial how he disposed of them, or by what agency, or at what expense, or whether their disposition resulted in a profit or loss to him. After duly considering the several objections raised to the account as stated by the court, we are of the opinion that none of said objections are tenable.

The question still remains whether the court erred in holding that the deed and bill of sale were in fact given and intended by the parties as securities in the nature of mortgages. Both were absolute on their face, and purported to convey and transfer to Whittemore an absolute title to the property therein

described. But their true character may be shown by parol, although where parties have deliberately given a transaction all the forms of a sale, slight, indefinite or unsatisfactory evidence will not be permitted to change its character, but that can be done only by proof which clearly shows that the intention of the parties was, that it should be a mortgage and not a sale. *Bentley* v. *O'Bryan,* 111 Ill. 53, and authorities cited.

The testimony of Fisher is clear and explicit to the effect that the sale was merely as security to Whittemore for the advances which he had made and agreed to make in the settlement of Fisher's liabilities, and that by the agreement Fisher was to retain possession of the goods and carry on the business in the name of "A. H. Fisher, Agent," and to deposit the money arising from sales, in the bank of which Whittemore was cashier, the same, less the cost of new goods and the expenses of the business, to be applied in repayment of Whittemore's advances. Whittemore, on the other hand, testifies that the sale to him was absolute, the consideration being, the advances made and liabilities incurred by him in settling with Fisher's creditors; that Fisher was to carry on the business as his agent, and was at liberty to retain and use out of the receipts' from the business such sums of money as should be required to defray his personal expenses; that the stock was to be replenished from time to time, and that all moneys arising from the sales of goods, except what was required to run the store and pay Fisher's living expenses, were to be turned over to Whittemore; and he further testifies that it was agreed, that if Fisher should refund to him the amount of his advances, with interest thereon at the rate of eight per cent per annum, within one year, he would re-convey to Fisher any of the property, whether real or personal, remaining on hand at the expiration of that time.

We are of the opinion that the transaction, even if we adopt Whittemore's version of it, was a mortgage and not an absolute sale. It was, in substance, a sale of the property with a

right of redemption within one year, the money to redeem to be made by sale of the goods in the ordinary course of business, the surplus, if any, to belong to Fisher. The theory sought to be based upon Whittemore's testimony, that the sale was absolute, coupled only with a provision giving Fisher the right, within one year, to repurchase the property sold, does not seem to be tenable. The repurchase by Fisher of the property sold, at any time or upon any terms, was manifestly not within the contemplation of the parties. The scheme adopted contemplated the conversion by him into cash of a sufficient amount of the property to pay Whittemore's advances and interest, and when that was done the residue was to be Fisher's. This was a contract having none of the elements of a repurchase but all of the elements of a redemption. Nor does the theory sought to be drawn from Whittemore's version of the contract, that the stipulation by which Fisher was to have the surplus after paying Whittemore's advances and interest, was a mere mode of providing Fisher a compensation for his services in taking charge of and managing the business, seem to rest upon any better foundation. Whittemore, so far as we have been able to discover, does not claim in his testimony that the right to the surplus was given to Fisher for his salary. The agreement was simply, that upon payment to Whittemore of his advances and interest, or in other words, upon redemption, the property remaining should be Fisher's.

But even if it should be admitted that Whittemore's testimony sustains the theory of an absolute sale, coupled only with a right to repurchase within a year, the circumstances disclosed by the record are strongly against it. In the first place, it is manifest from the entire evidence, that the object and motive of Fisher in applying to Whittemore for help in his financial embarrassments were, not to sell and dispose of his stock of goods and business, but to save them. The large patronage which he had attracted to himself and built up by the labor and efforts of sixteen years had in his estimation a

very considerable value, and his leading idea apparently was, to so arrange his financial difficulties as to render it possible for him to retain his business and avail himself of its advantages. Whittemore was a banker and not a merchant, his business being that of loaning money and not that of selling goods, and his leading purpose presumptively was, to loan his money in such way as to secure its repayment and interest.

The mode in which the parties dealt with the subject matter of the contract was not that which would be expected of two competent and shrewd business men, if we are to assume that they were engaged in the purchase and sale, out and out, of a stock of merchandize and the business connected therewith. No price or value was placed upon any of the property, either real or personal. No inventory was taken of the goods, nor does any other mode seem to have been adopted for ascertaining their precise or approximate value. An inventory had been taken by the assignee while the goods were in his possession, but that does not appear to have been referred to or used for the purpose of fixing a price at which the goods were to be taken and paid for by Whittemore. Nor was the aggregate amount of money which Whittemore was to pay or secure in the settlement with Fisher's creditors ascertained, at least until several months after the deed and bill of sale were executed and delivered. A number of creditors who had proved up their debts before the assignee, and whose claims were therefore known to Whittemore, were not settled with at the time, but some months later, those creditors having brought suit for the collection of their debts, a settlement and compromise of their claims was made, involving a further payment by Whittemore of nearly $7000. It is scarcely credible that Whittemore would make an absolute purchase involving the payment of nearly $70,000, or that Fisher would sell property worth at least that sum, without first fixing in some mode the value of the property to be sold or the price to be paid. But if the transaction was a mortgage to secure Whittemore's ad-

vances, there is nothing in it which can be said to be especially unusual or unbusinesslike. If it was a mortgage, there was no occasion for putting any exact price upon the goods, or for ascertaining in advance the exact amount which Whittemore would be obliged to pay. All the parties would be likely to be solicitous about in that behalf would be, to know that the property was of sufficient value to constitute adequate security.

After the execution of the bill of sale, Fisher took charge of the goods, and for nearly a year and a half, carried on the business practically as though it was his own. He rented a store room and fitted it up at considerable expense, bought goods to replenish his stock as he saw fit, hired, paid and discharged employes, and had complete control of the entire business during that period, without any substantial interference or supervision by Whittemore. The bank of which Whittemore was cashier was in the immediate neighborhood, and he occasionally dropped into the store to inquire how the business was progressing, but seldom if ever to give directions. At the bank he received and kept an account of the moneys deposited by Fisher, and it was only after there had been a suspension for a short period of the usual amount of deposits, that he saw fit to interpose and demand possession. Under these circumstances it is difficult to believe that Whittemore was the real proprietor of the business, and that Fisher was a mere agent.

Nor is it credible that Fisher would undertake to carry on the business upon the terms, as to compensation, stated by Whittemore, if he was a mere agent. Those terms were, the payment out of the proceeds of the business of his current personal expenses, and, if the contingent right to the surplus is to be deemed part of his compensation, the privilege of repurchasing what might remain of the property by paying out of the proceeds of sales, within one year, the entire amount of Whittemore's advances and interest, which at the end of the year would amount to over $74,000. He was compelled by the terms of the agreement to keep the stock of goods replen-

ished and to pay the current expenses, and it was manifest from the start that the possibility of realizing, in addition, out of the business, that large sum in one year, was so remote as to make the right to repurchase on the terms stated practically worthless. The result shows that after carrying on the business for nearly a year and a half the net receipts were less than one-half of the sum which he was required to pay. But if we credit the version sought to be put upon the transaction, we must believe that Fisher undertook to carry on and superintend this large business for Whittemore, with all its anxieties and responsibilities, for no other compensation than the payment of his daily personal expenses, and a right of repurchase which, under the circumstances, was of no value. Even after the year had expired and Fisher's right to repurchase had thereby terminated, he continued to carry on the business without any change in the arrangement as to compensation, and upon the theory contended for, we should be compelled to believe that he did so upon no other compensation than the payment of his personal expenses.

In view of the foregoing considerations, we are of the opinion that, beyond any reasonable controversy, the transaction in question was a transfer of lands and goods by way of mortgage and not as an absolute sale, and that the court below was correct in so treating it.

We find no error in the record, and the decree will therefore be affirmed.

*Decree affirmed.*

Shope, C. J., and Wilkin, J., dissenting.