SOUTHERN MICHIGAN NATIONAL BANK V. EDWIN BYLES
AND EDWIN J. PHELPS, ASSIGNEES OF KELLOGG,
SAWYER & COMPANY.

*Bills and notes—Release of indorsers—Assignment for benefit of creditors—Dividends—Equity.*

1. After the purchase by a bank, before maturity and for value, of *indorsed* commercial paper, the makers and indorsers made assignments for the benefit of their respective creditors. After proving its claim against *each* estate, the bank received dividends from the assignees of the indorsers in satisfaction of their liability on the note, but with the understanding that the amounts should not be applied thereon; after which the assignees of the *makers*, in making a dividend, based the same, as to said bank, upon the *balance* of its claim.

   *Held*, that the dividends should have been based upon the *full* amount of said claim as proved up against the estate, the bank being entitled to share with the other creditors on *that* basis until its claim was *fully* paid.

2. In *such* a case the general rule that, when one of two creditors of a common debtor has two funds out of which he may receive his pay, he is *first* to exhaust the fund upon which the other creditor has no lien, does not apply; the other creditors having no right, legal or equitable, to the moneys received by the bank from the indorsers.

3. The assignment by the makers in no way modified or changed the contract or liability of the indorsers, nor their rights in the relation they sustained to the bank, no contract relations existing between them and the *other* creditors of said makers; nor could their release affect the right of the bank to a *pro rata* share with the other creditors in the estate of the makers of the note.

4. In *such* a case the chancery court has jurisdiction, under How. Stat. § 8749, to entertain a *petition* filed by the bank against the assignees of the maker of the note to enforce its rights, and may make an order for the appearance of the assignees; notice of which petition and order need not be served upon the creditors, who are sufficiently represented by the assignees.

5. A court of chancery may always direct the *manner* of proceeding before it, unless the practice is prescribed by statute, and may order a reference or take proofs in any matter pending before it whenever necessary to be further advised of the facts.

Appeal from Kalamazoo. (Mills, J.) Argued July 7, 1887. Decided October 20, 1887.

Petition by creditor to compel assignees to make proper dividend. Assignees appeal. Decree affirmed. The facts are stated in the opinion.

*Barlow & Loveridge (Edwin F. Uhl, of counsel), for* petitioner.

*Edwards & Stewart,* for assignees.

SHERWOOD, J.    The Southern Michigan National Bank of Coldwater owns and holds a note of which the following is a copy:

" $1,102.63.     GRAND RAPIDS, MICH., August 10, 1883.

" Three months after date, we promise to pay to the order of Chickering & Kyser eleven hundred and two and 63-100 dollars, at the Michigan National Bank, Kalamazoo, Michigan ; value received.

" KELLOGG, SAWYER & Co."

The note was made by Kellogg, Sawyer & Co., as accommodation makers for the payees, Chickering & Kyser.

The note was negotiated by the payees, and by them and Frank Chickering and Rice & Messmore indorsed; and the day before the note became due, the ninth day of November, 1883, Kellogg, Sawyer & Co. failed, and made an assignment for the benefit of their creditors.

The note became due, and was duly protested, and notice of protest was properly given to all the indorsers, thus establishing their liability for the payment of the note.

Chickering & Kyser and Frank Chickering each failed and made an assignment for the benefit of their creditors about the same time that Kellogg, Sawyer & Co. made theirs.

On or about the seventeenth day of January, 1884, the Southern Michigan National Bank filed and proved its claim

upon said note against the estate of Kellogg, Sawyer & Co., and also in same manner filed and proved its claim against each of the estates of Chickering & Kyser and of Frank Chickering.

On or about the fourteenth day of February, 1884, an agreement in writing was made between the bank and Chickering & Kyser, that upon the payment to the bank of 40 per cent. of the proved claim upon the note, to wit, $453.76, they should be released from any further liability upon the claim. Said agreement reads as follows:

"*Whereas,* Frank Chickering and F. Kyser, composing the firm of Chickering & Kyser, of Grand Rapids, Michigan, have lately become insolvent, and made an assignment for the benefit of their creditors.

"*And Whereas,* said Chickering and Kyser are desirous of making a compromise with their creditors for all their indebtedness, and of being released from all further liability therefor.

"*And Whereas,* in consideration of such release, certain persons are willing to assist said Chickering & Kyser to pay a certain percentage of their indebtedness, and to bring about such compromise.

"Now, therefore, we, the undersigned, creditors of said Chickering & Kyser, in consideration of the payment by them of 40 per cent. of our respective claims, one-third thereof in four months, one-third in eight months, and one-third in twelve months after the date hereof, to be secured by the notes of said Chickering & Kyser, and to be indorsed by Daniel McCoy, hereby agree, each for himself, and not one for another, with said Chickering & Kyser, to discharge them upon the receipt of such notes from any and all further indebtedness of every kind to us respectively.

"*Provided,* however, and it is hereby expressly understood, that neither anything herein contained nor the acceptance of such percentage, or of the note given therefor, shall in any manner affect our claims, rights, or remedies against any other party or parties who is or are or may become liable on any note, draft or acceptance, or other commercial paper or obligation of any kind, to which said Chickering & Kyser are parties, or upon which they are liable, and all claims, rights, and remedies against all such parties are hereby expressly reserved."

The payment of said sum was made to the bank in acceptable paper, and the release of Chickering & Kyser was then duly executed. It is, however, stated in the record, or rather petition of the bank in this case, that the amount thus paid it was understood was not to be applied upon the note, and that such was the condition of the payment, and that it should not affect the bank's right to receive from the estate of Kellogg, Sawyer & Co. a dividend upon the full amount of the note.

On the fourteenth of February, 1884, or soon thereafter, a paper writing of the same date and effect as the release referred to was by Chickering & Kyser presented to the assignees of Kellogg, Sawyer & Co. for their signatures, which were refused; but upon further solicitation by Chickering & Kyser for a release upon a proposed composition and payment to their creditors of 40 per cent., Kellogg, Sawyer & Co., and defendants, their assignees, executed and delivered to said Chickering & Kyser a release, operative upon fulfillment of certain expressed conditions, one of which conditions was that upon all outstanding notes to which both sail firms of Chickering & Kyser and Kellogg, Sawyer & Co., either as maker or indorser, were parties (and which included this note held by the Southern Michigan National Bank), the proposed 40 per cent. compromise payment should be indorsed. The agreement reads as follows:

" *Whereas,* the late firm of Kellogg, Sawyer & Co. have made an assignment of their property and effects, real and personal, for the benefit of their creditors, in trust, to Edwin Byles and Edwin J. Phelps, as assignees;

" *And Whereas,* Kellogg, Sawyer & Co. are desirous of making a compromise with their creditors of all their indebtedness, and of being released from all further liability therefor;

" *And Whereas,* the firm of Chickering & Kyser, who have heretofore made an assignment in trust for the benefit of their creditors, among which is the said firm of Kellogg, Sawyer & Co , propose a composition with their creditors,

and a release from their debts, by the payment of 40 per cent. of their indebtedness;

"*And Whereas*, among the assets of said Chickering & Kyser are two promissory notes, signed by Kellogg, Sawyer & Co., payable to the order of Chickering & Kyser. one of which notes is dated October 22, 1883, and is payable in the sum of thirteen hundred and fifty dollars, and the other of said notes is dated November 1, 1883, and is payable in the sum of eleven hundred and forty dollars, and both notes, respectively, falling due in three months from date;

"*And Whereas*, Kellogg, Sawyer & Co., as assets in the hands of their assignees, are the payees of two several promissory notes, payable to their order, made by said Chickering & Kyser, the date, time of payment, and amount, respectively of said promissory notes being the counterpart of said above described notes of Kellogg, Sawyer & Co.

"*And Whereas*, there are certain notes (in a total amount of about fifteen thousand six hundred dollars), signed by Kellogg, Sawyer & Co., for the benefit of Chickering & Kyser, and indorsed by them, and also certain other notes (in a total amount of about sixteen thousand seven hundred dollars), signed by Chickering & Kyser, for the benefit of Kellogg, Sawyer & Co., and indorsed by them, all of which notes have been negotiated, and are now held and owned by various third parties; and said firm of Chickering & Kyser having as aforesaid offered a compromise of their debts upon a composition of 40 cents on the dollar, to be paid their creditors, and they to be fully discharged from all their debts.

"Now, therefore, the undersigned, Joseph E. Kellogg, Albert E. Sawyer, and Frank I. Kellogg, composing the late firm of Kellogg, Sawyer & Co., in consideration of—

"*First*. That said promissory notes aforesaid, respectively held against said respective named firms, be evenly exchanged, and by the holders thereof respectively surrendered to be canceled.

"*Second*. The said 40 per cent. proposed to be paid by said Chickering & Kyser in settlement of their indebtedness, as paid upon all the promissory notes hereinbefore described, as held and owned by various third parties, shall be indorsed upon said respective notes as a payment respectively thereon.

"And upon the conditions above stated, and in consideration thereof, we do hereby agree and consent that the holders of the said notes herein described, as owned and held by said various third parties, may receive from said Chickering & Kyser 40 per cent. on the amounts of all the above notes, and

thereupon release them from all further liability thereon, and hold Kellogg, Sawyer & Co. for the balance thereof.

"And we do hereby authorize our assignees to consent to the above for us.

"KELLOGG, SAWYER & CO.,
"By JOSEPH E. KELLOGG,
"ALBERT E. SAWYER.
"FRANK I. KELLOGG.

"*Kalamazoo, March 31, 1884.*

"In consideration of the above and foregoing, and of the consent, as above expressed, of Joseph E. Kellogg, Albert E. Sawyer, and Frank I. Kellogg to be held liable for the balance after the payment by Chickering & Kyser of 40 per. cent. of their indebtedness, as hereinbefore described, we, the assignees of Kellogg, Sawyer & Co., hereby consent that upon the receipt of 40 per cent. paid by Chickering & Kyser on the paper hereinbefore described, meaning to include all unpaid paper on which the names of Kellogg, Sawyer & Cc. and Chickering & Kyser appear, either as makers or indorsers, and which payment shall be indorsed on all such paper, Chickering & Kyser shall be released from any further liability on said paper: *Provided,* the exchange of the two notes given, respectively, by Kellogg, Sawyer & Co. and Chickering & Kyser, as described in the foregoing agreement of Kellogg, Sawyer & Co., shall be made as therein described.

"EDWIN BYLES,
"EDWIN J. PHELPS,
"Assignees of Kellogg, Sawyer & Co.

"*Dated March 31, 1884.*"

Besides the amount petitioner received on such compromise with Chickering & Kyser, it received from the estate of Frank Chickering, one of the indorsers of said note, on account of his said indorsement, a dividend of $88.30, and neither has this sum been indorsed on said note. It is not claimed by petitioner that there was any agreement that such dividend of $88.30 from Frank Chickering's estate should not be indorsed as such on said note.

After these payments, respectively, by Chickering & Kyser and Frank Chickering to petitioner, a total of $542.06, the assignees of Kellogg, Sawyer & Co., in 1886, declared a

dividend to creditors of 40 per cent., and calculated the amount of the dividend to petitioner upon its proved claim, $1,104.75, less total of payment, $542.06. Petitioner, claiming that the 40 per cent. should be calculated upon the debt as proved, without deduction for payments, refused to accept in satisfaction of said 40 per cent. dividend the apportionment made.

The amount of the dividend as claimed by the bank amounts to $441.90.

Upon the foregoing facts, the bank filed a petition, which was sworn to on the second day of July, 1886, alleging that the assignees of Kellogg, Sawyer & Co. insist that they shall make the dividends of the moneys belonging to the estate they represent upon the balance of the bank's claim, after deducting the moneys received from the other two estates by the bank, and that a large portion of the estate of Kellogg, Sawyer & Co. remains undistributed, and that the assignees now have in their hands as the assets of said estate sufficient to meet the claim of the bank.

The petitioner prays for answer by the assignees, and that they may be ordered by the court to pay over to the bank the said sum of $441.90, and that the court may adjudge that the petitioner is entitled to receive dividends upon the full face of its claim of $1,104.75, until the full amount thereof has been paid,—

"And for such other relief as to the court may seem right; and if it appears at any stage of the proceedings that any other parties are interested herein, that they may be made parties hereto with apt words to charge them."

The petition then contains the usual prayer for subpœna contained in a bill. It nowhere appears in the record that any subpœna was ever issued.

The petition was filed in the circuit court for the county of Kalamazoo, in chancery, and on application of petitioner's

solicitors the circuit judge made the following order, the service of which was admitted by the assignees of Kellogg, Sawyer & Co., on the thirteenth day of July, 1886:

"STATE OF MICHIGAN.

"The Circuit Court for the County of Kalamazoo, in Chancery.
*In the matter of Kellogg, Sawyer & Co., Insolvents.*

" Now comes the Southern Michigan National Bank, a creditor of said insolvents, and whose claim has been regularly proved against their estate, and makes application to said court, under section 8749 of Howell's Annotated Statutes, that an order may be entered by this court requiring Edwin Byles and Edwin J. Pnelps, assignees of said insolvents, to appear and answer the petition filed herewith within twenty days after service upon them of a copy of such petition, and of the order so entered, and for a further order that, in case they fail to answer such petition in accordance with such order, such petition stand as confessed by them, and be heard at any time; and that, in case they so answer, they shall serve within said twenty days a copy of their answer upon petitioner, or its said solicitors, and that the petitioner be at liberty to reply thereto within ten days after said service; and that, in case an issue is formed between the parties, such matter be referred to one of the commissioners of Kalamazoo county, to take proofs as to the issue so formed, and report the same within a convenient time, not to exceed sixty days, to this court, and that such matter stand for hearing at the next regular term of said court without further notice."

Under the requirements of this order the assignees of Kellogg, Sawyer & Co. answered the petition, without waiving any irregularity of the proceeding by petition, and protesting against the jurisdiction of the court by petition in the premises; and after admitting the assignment of Kellogg, Sawyer & Co., the making of the note, the ownership by the petitioner, the indorsements, non-payment, and protest, that the assignees of Kellogg, Sawyer & Co. received a large amount of property, and have converted part into cash, and that the bank's claim was proved against the estate, they then deny that the bank is entitled to $441.90, and aver that it should receive under proper distribution but $281.35.

They further say tha —

"The material fact is that said Chickering & Kyser paid, and secured to be paid, to the petitioner on account of and as payment upon said promissory note, which as indorsers .they were liable to pay, the sum of $453.76, and also said Frank Chickering, for his liability as indorser, has paid thereon $88.30, and these payments were before any dividends were declared by these assignees."

They admit that they refuse to pay the bank a dividend, except on the balance of the claim, after such deductions are made.

They further say that the note of Kellogg, Sawyer & Co., indorsed by Chickering & Kyser and Frank Chickering, is not their accommodation indorsement, but was given upon full value therefor, Kellogg, Sawyer & Co. having indorsed and· become liable to pay a like amount of the former's paper outstanding in third parties' hands; and therefore the assignees further say that the bank could ·give no release to Chickering & Kyser, while Kellogg, Sawyer & Co.'s liability continued as indorsers for Chickering & Kyser, which would not, without the consent of Kellogg, Sawyer & Co., release them also; and hence it was that the consent of the latter was asked, and upon certain conditions obtained, as expressed in the agreement last set forth, a principal condition of which was that the 40 per cent. proposed to be paid by Chickering & Kyser upon composition with the creditors, with the release of Kellogg, Sawyer & Co. and of their assignees, be indorsed as payments upon all notes therein described outstanding in the hands of third parties.

And the defendants further say that the release of the indorsers Chickering & Kyser and Frank Chickering, by the petitioner, is a release of Kellogg, Sawyer & Co., except so far as they may have assented to it in said agreement, and but for which assent and compliance with its conditions petitioner has no claim for any dividends upon the note.

They also deny that a large portion of the estate of Kellogg, Sawyer & Co. remains undistributed; but they admit

there is sufficient of said estate undistributed to pay the bank the alleged deficiency, if the court should hold there is any such deficiency in the amount of dividends to it.

The testimony was taken in open court, and consisted mainly of statements of the facts and concessions made by counsel, and among which were, on the part of the petitioner, that the note was purchased by the bank for the sum of $1,082.88, before the same became due, of Rice and Messmore, the last indorsers, and that at the time of the bank's purchase it had, neither by itself or through its agents, any notice or knowledge or intimation that any other or different relation between the parties to the paper existed, other than that which is established by reason of their names appearing in the order they do upon the paper, as makers and indorsers; that there was an express agreement between the bank and Chickering & Kyser, when the 40 per cent. was paid to the bank, that the amount should not be indorsed upon the note of petitioner, and that the rights of all the parties should be preserved.

The rest of the testimony on either side relates to the facts hereinbefore stated, and need not again appear here.

When the petitioner commenced to make its proofs, counsel for the defendants objected to taking any testimony in the matter, on the grounds:

"1. The court has no jurisdiction of the subject-matter in this proceeding by petition, and no jurisdiction in this proceeding by petition to order or decree the relief prayed; that this proceeding by petition is not a suit; that only by suit commenced by bill in chancery, and prosecuted in accordance with the rules and practice prescribed by the court for the conduct of such suits, would the court take jurisdiction, and grant the relief prayed .

"2. If it be claimed that, in structure and effect, the petition is to be construed a bill of complaint, then the court has acquired no jurisdiction of the persons of defendants, there having been no subpoena to appear and answer issued and served on defendants, and there is no voluntary appearance of defendants, but their appearance and their answer in

the matter was enforced under the order of said court of the date of July 13, 1886, and served on pain that, if not so appearing and answering, they be defaulted, and said petition be taken as confessed by them for not so appearing and answering."

On the hearing in the case, the circuit judge overruled the objection of defendants' counsel, and upon this ruling counsel for defendants lay some stress.  But we think the ruling was correct.  There is really no reason why the alleged grievance may not as well be heard upon the petition as upon a bill.  The facts upon which the relief is based and asked and information desired can as well be stated and presented in a petition as in a bill, and the rights of all the parties can as well be protected in the one as in the other.

Parties can be brought into court as well by one kind of an order as another.  A court of chancery may always direct the manner of proceeding before it, unless the practice is prescribed by statute, and may order a reference or take proofs in any matter pending before it whenever necessary to be further advised of the facts.

Mr. Barbour, in his work on Practice, says:

"Petitions may be presented either in a cause or in a matter over which the court has jurisdiction under some act of the legislature, or other special authority."  1 Barb. Ch. Pr. 578.

The court, upon the petition and answer and proofs taken, entered the following decree:

"This case came on to be heard on pleadings and proofs taken in open court, Barlow & Loveridge appearing as solicitors for the petitioner, and Edwards & Stewart as solicitors for the defendants.

"And thereupon, after reading the pleadings and hearing the proofs, from which it appears to the court that Kellogg, Sawyer & Co., at the time of their said assignment, were indebted to the said complainant in the sum of $1,104.75, and that such claim has been regularly and duly proved up against them, and the proof thereof filed in the office of the clerk of the county of Kalamazoo.

" And it further appearing that said indebtedness was upon · promissory note, which was indorsed regularly by Chickering & Kyser, Frank Chickering, and Rice & Messmore, and that Chickering & Kyser, under and by virtue of the instrument set forth in the petition filed in this matter, paid to said Southern Michigan National Bank the sum of four hundred fifty-three and 76-100 dollars, but under the express agreement that such payment was in no way to affect the rights of the said petitioners against said Kellogg, Sawyer & Co., or their estate, nor in any way affect their right to receive whatever dividend the assignees of said Kellogg, Sawyer & Co. should declare upon the whole amount, and that such payment was made by them as indorsers only, and that the further sum of eighty-eight and 30-100 dollars was received from Frank Chickering, another of the said indorsers of the said note, but that neither of such sums were indorsed upon said note, and in no way affected the liability of said Kellogg, Sawyer & Co. thereon.

" And it further appearing that said defendants, as assignees of said Kellogg, Sawyer & Co., have declared a dividend of 40 per cent. upon the indebtedness of said Kellogg, Sawyer & Co., and that they have sufficient funds in their hands to pay the dividend so declared.

" It is ordered, adjudged, and decreed that the said defendants, Edwin J. Phelps and Edwin Byles, as assignees of Kellogg, Sawyer & Co., pay to said complainants the sum of four hundred forty-one and 80-100 dollars, being 40 per cent. of the sum of eleven hundred four and 75-100 dollars, the amount proved up against said estate.

" And it appearing to the court that the questions involved herein are novel and undecided in this State by the Supreme Court, it is further ordered, adjudged, and decreed that neither party do recover costs as against the other.·

" ALFRED J. MILLS,<br>" Circuit Judge."

We think the statute confers the authority upon the circuit court, in chancery, to entertain the proceedings taken in this case. How. Stat. § 8749. It says, speaking of assignments, that such court shall have—

" Supervisory power of all matters, questions, and disputes arising under such assignment, except as otherwise provided in this act, and may, on the application of the assignee or any person interested, make all necessary and proper orders

for the management and disposition of the assigned property, the distribution of the assets and avails," etc.

This statute confers power upon the court, and enables it to acquire jurisdiction of the parties; and, as to the question of practice in bringing the parties interested before the court, it was not necessary to serve the creditors with notice of the petition, or with a copy of the order made by the court. So long as the assignees appeared, the creditors were sufficiently represented in the matter.

It is claimed on the part of the petitioner that, if the proceeding by petition was irregular, the irregularity was waived by the defendants' appearance and answer, and giving notice to take proofs in open court; but we think there was no waiver. The rights of the defendants were, by the protest contained in the answer, sufficiently protected against waiver.

We think the circuit judge was right in his conclusion upon the main question presented. There is nothing in the record showing that the bank did not take the note in good faith and for value, before due. It was taken by the petitioner in due course of business, with the liabilities of all the parties upon the paper fixed. Under such circumstances, the holder had the right to sue any of the makers and indorsers, or all of them, and collect the whole claim of any one of them if it could. It had the right to compromise and take what it could get of the insolvent or any other indorsers of the paper, and then share with the other creditors of the makers of the note until the whole claim was paid. It could, however, have but one satisfaction.

The amount of indebtedness upon which the petitioner could share with the other creditors of the makers, until the debt was paid, was determined by the amount owing at the time the makers made their assignment.

The general rule that, when one of two creditors of a common debtor has two funds out of which he may receive his pay, he is first to resort to the fund upon which the other

creditor has no lien, and exhaust that before encroaching upon the other, does not apply to cases like the present. The other creditors have no right, legal or equitable, to the moneys received by the bank from the indorsers. 1 Story, Eq. Jur. § 643; *Dickson v. Chorn,* 6 Iowa, 19; *Armitage v. Toll,* 64 Mich. 412; *Logan v. Anderson,* 18 B. Mon. 114; *Patten's Appeal,* 45 Penn. St. 151; *Ex parte Nason,* 70 Me. 363; *Blake v. Ames,* 8 Allen, 318; *Citizen's Bank v. Patterson,* 78 Ky. 291; *Nat'l, etc., Bank v. Porter,* 122 Mass. 308; *Miller's Estate,* 82 Penn. St. 113; *Sohier v. Loring,* 6 Cush. 548.

The assignment made by the makers to the defendants could in no way modify or change the contract or liability of the indorsers. Their rights remain the same after as before the assignment. Neither does it affect the rights of the indorsers in the relation they sustain to the holder; and there is no contract relation, either legal or equitable, existing between these indorsers and the creditors of Kellogg, Sawyer & Co., excepting with those who hold the note in question. Such being the fact, the release of the indorsers, or of any one of them, could have no effect upon the bank's right to a *pro rata* share with the other creditors in the bankrupt estate of Kellogg, Sawyer & Co., the makers of the note. The release was of no concern to the other creditors, nor to the defendants. 2 Rand. Com. Paper, § 949; *Mueller v. Dobschuetz,* 89 Ill. 176.

We think the main question raised in this case, while new in this State, is fully settled both upon reason and authority elsewhere, and we find no occasion for making any change here.

The order entered in the case by the circuit judge will therefore be affirmed.

The other Justices concurred.