### STATE *v.* GRAND RAPIDS SAVINGS BANK.

1. DEPOSITARIES — CONTRACTS — COLLATERAL — STATE — SURPLUS FUNDS.

Collateral contract with depositary bank relative to deposit of surplus moneys of State specifically referring to "all moneys belonging to the said State" which contained no reference to other contracts then existing between State and bank and its sureties with reference to surplus funds deposited with bank nor limitation as to amount *held*, an unambiguous contract referring to all of deposited funds belonging to State and not merely one of two accounts designated for such funds.

2. PLEDGES—CONTRACTS—COLLATERAL.

A dispute as to the debt or debts for which the pledged property or collateral may be held or used is to be determined with reference to the agreement between the pledgor and the pledgee.

---

Interpretation of integrated contracts, see 1 Restatement, Contracts, §§ 230, 235.

3. Depositaries—Collateral—Surplus Funds of State—Divi-
dends.

    Under unambiguous agreement as to deposit of collateral secur-
ing repayment "of all moneys belonging to" State deposited
with bank, designated as depositary of surplus funds of the
State, latter was entitled to retain all proceeds from the sale
of such collateral until such proceeds plus paid dividends
satisfied its entire claim, principal and interest.

Appeal from Ingham; Carr (Leland W.), J. Sub-
mitted October 21, 1942. (Docket No. 72, Calendar
No. 42,134.) Decided December 23, 1942.

Bill by State of Michigan against Grand Rapids
Savings Bank, a Michigan corporation, its sureties,
and William R. McCaslin, receiver of the Grand
Rapids Savings Bank, for a declaratory judgment
relating to depositary contract. Cross bill by Grand
Rapids Savings Bank and its receiver for return of
securities pledged as collateral, for return of over-
payment, and for other relief. Decree for plaintiff.
Defendants appeal. Affirmed.

*Herbert J. Rushton,* Attorney General, and
*James F. Shepherd,* Chief Assistant Attorney Gen-
eral, for State of Michigan.

*Walter I. McKenzie,* for receiver of Central West
Casualty Company and custodian of Wayne Surety
Company.

*Samuel H. Himelstein* (*Earl W. Munshaw,* of
counsel), for defendants.

North, J. Defendant Grand Rapids Savings
Bank was designated "a depositary of part of the

surplus funds belonging to the State of Michigan" in January, 1933, by the State treasurer, Theodore I. Fry. Four surety bonds totalling $285,000 were given to insure the safekeeping and payment on demand of State money to be deposited. In addition to these four bonds the bank gave the State additional security by entering into an agreement for depositing with the State collateral security consisting of municipal and government bonds and notes. A copy of the contract wherein the bank was designated as a depositary accompanied and was made a part of each of the four surety bonds and of the collateral security agreement. These five copies of the depositary agreements, some dated January 1, 1933, and some January 2, 1933, are otherwise identical, with one exception which is wholly immaterial in the instant case. Deposits of State money were made and entered from time to time in two separate accounts. One was designated the "surety" account, and the other the "collateral" account. The bank having closed its doors February 14, 1933, and two of the sureties having since gone into receivership, a declaratory judgment under the statute * was sought by the State on the questions as to whether the collateral deposited by the bank with the State secured repayment of all funds deposited by the State with the bank or secured only the so-called collateral account; and also as to what extent the State was entitled to dividends declared by the bank. The Grand Rapids Savings Bank has appealed from a decree which sustained plaintiff's contentions.

All copies of the depositary agreement contained the following language:

"The said party of the second part agrees to receive and safely keep all such surplus funds of said

* See 3 Comp. Laws 1929, § 13903 *et seq.* (Stat. Ann. § 27.501 *et seq.*).—REPORTER.

State of Michigan, as may be offered or deposited by said State Treasurer, and to reimburse and pay the same to the said State treasurer, or his successor in office, or whoever may be lawfully entitled to receive the same whenever called for; and to pay interest on such surplus funds so deposited, at the rate of one and one-half per cent. per annum."

The one collateral instrument contained the following:

"Whereas, in accordance with the foregoing contract the Grand Rapids Savings Bank of Grand Rapids, Michigan, has been designated by Theodore I. Fry, the treasurer of the State of Michigan, as a depositary of part of the surplus funds belonging to the State of Michigan, the said bank does hereby deposit with the said State treasurer, as collateral security for the safety and payment upon demand of all moneys belonging to the said State of Michigan, in accordance with the said contract, the securities enumerated in the schedule made a part hereof and does hereby give the said State treasurer authority to sell all or any part thereof, at public or private sale at his discretion, without advertising the same, or giving the undersigned any notice, and to apply so much of the proceeds thereof as may be necessary to repay such deposit with all interest due thereon, and also to pay all expenses attending the sale of the said collateral security."

As noted above, the bank carried the deposits of the State's surplus funds in two separate accounts, one designated as the "surety" account, and the other as the "collateral" account. In the same manner, the State treasurer carried these deposits in two separate accounts on his books, and he filed two separate proofs of claim with the receiver of the bank. When the bank closed its doors February 14, 1933, there was on deposit by the State treasurer the sum of $285,000 in the surety account, and the sum of $110,500 in the collateral account. The

surety account was secured by surety bonds to the extent of $285,000 in the following companies: Aetna Casualty & Surety Company of Hartford, Connecticut, $50,000; American Surety Company of New York, $50,000; Central West Casualty Company, $85,000; Wayne Surety Company, $100,000. The collateral account was secured by deposit of notes and bonds having a par value of $150,800.

The balance due to the State treasurer on the surety account has been reduced to the sum of $87,875 by the following payments: 5 per cent. released May 11, 1933, amounting to $14,250; receiver's dividend of 50 per cent., October 18, 1933, totalling $135,375, based on proof of claim filed by State treasurer; payment by American Surety Company and Aetna Casualty & Surety Company of $23,750 each on January 15, 1936, in full of their pro rata liability on their depositary bonds "with waiver of any claim against participation or additional credit resulting from the sale and liquidation of the collateral security furnished by the bank on the collateral account."

In accordance with the terms and provisions of the collateral instrument, the State treasurer sold the collateral securities for $54,242.29 in excess of the amount then due to the State on the so-called collateral account, but the State treasurer did not deliver to the receiver this excess amount, claiming that the collateral deposited with the State was legally applicable to all moneys belonging to the State on deposit with the bank, including the amount in the so-called surety account. The receiver on the other hand claims this $54,242.29 cannot be applied on any but the so-called collateral deposit.

The parties have stipulated that the receiver of the bank has declared an additional 7 per cent. dividend payable to all creditors, including the State

treasurer, but that this additional dividend in the sum of $18,952.50 on the surety account has been withheld by the receiver of the bank pending judicial determination of the right of the State treasurer to apply on the surety account the balance of the proceeds from the sale of the collateral securities.

The trial judge found and decreed that the collateral was deposited to secure repayment of all funds deposited by the State and not just the so-called "collateral" account. He also decreed the further relief sought by plaintiff relative to payment of dividends by the bank's receiver. After quoting the contract as to the use of the collateral, the trial court said:

"It seems to me that this language cannot be regarded as ambiguous. The specific reference to 'all moneys belonging to the said State' appears to be an unequivocal expression of the intention of the parties. The depositary agreement contained no limitation as to amount, nor did it contain reference to any other undertaking between the State and the bank. I think we must assume that had the parties at the time intended a limitation on the indicated scope of the lien, such intention would have been expressed in the agreement. The fact that the bank, and also the State department, entered deposits made from time to time in two accounts may not be given the effect of modifying or changing the obvious meaning of the written contract. It must be said that such entries were matters of bookkeeping only. In the final analysis the aggregate amount of deposits in the bank constituted a single debt to the State of Michigan. No contractual undertaking between the parties can be construed as an attempt to provide otherwise. As before suggested, these agreements were not ambiguous. On the contrary, it appears that they were on the form in common use.

"We are not here concerned with a situation in which a contract that is ambiguous in its provisions has been given a particular construction by the parties to it. The rule is, of course, well established that in cases where the intention of a written instrument is uncertain the practical construction placed on it, by the parties to it, or by administrative officers charged with the performance of public duties, should be given careful consideration.  *  *  *  It seems to be equally well settled that a contract not ambiguous in its terms will be construed as written, notwithstanding an inconsistent administrative interpretation. Neither may it be said that the State is estopped to claim the benefit of the contract because of the action of the State treasurer in carrying two accounts in his books and in presenting two claims in the liquidation proceedings. Without reference to any other consideration, there was no element of prejudice to the bank, or to the receiver, because of such acts. It is scarcely necessary to call attention to the general rule that estoppel, in the ordinary sense of the term, will not arise against the State because of the acts of administrative officers."

The findings of the trial court are correct. The contract is unambiguous; it was given to secure the safety "of *all* moneys belonging to the said State of Michigan." Appellant argues that the language in the agreement for depositing collateral authorizing the State "to apply so much of the proceeds thereof as may be necessary to repay *such deposit*" limits the collateral security to the "collateral" account alone. Instead, a proper reading of the entire agreement in connection with the depositary contract, of which it is a part, shows that the phrase *"such deposit"* refers back to the bank's having been designated as a depositary for part of the surplus funds of the State, *i.e.,* "such deposit" means all the deposited funds of the State. No limit was placed on

the amount to be deposited nor was any special deposit designated outside of the fact that it be of surplus State funds. The trial judge rightfully found "the aggregate amount of deposits in the Bank constituted a single debt to the State of Michigan." The contract being unambiguous must control. "A dispute as to the debt or debts for which the pledged property or collateral may be held or used is to be determined with reference to the agreement between the pledgor and the pledgee." 41 Am. Jur. p. 613. *State of Arkansas* v. *Pufahl* (C. C. A.), 52 Fed. (2d) 116, relied upon by the bank to show that the collateral deposit was limited to secure the collateral account alone, holds that the contract governs. The *Pufahl Case* differs from the instant case, however, in that there the amount of each of the several agreements was for a specific and different sum and did not cover "all moneys" as in this case.

Since, as we have found, the collateral was applicable to all deposited moneys belonging to the State, the State is entitled to retain all proceeds from sale of the collateral until such proceeds plus paid dividends satisfy its entire claim, principal and interest. The State also is entitled to dividends on the entire sum owed to it by the bank, $375,725. This point is decided *In re E. Bement's Sons,* 150 Mich. 530, which is quoted with approval in *Detroit Trust Co.* v. *Detroit City Service Co.,* 262 Mich. 14, 44:

" 'Until the debt is paid in full, principal and interest, the creditor is entitled to such dividends as may be declared upon the total of the debt as proved. It is entirely immaterial to the receiver in what manner proceeds of collateral are applied, to the point when the sum of the dividends and of collateral collected has extinguished the entire debt, principal and interest.' "

The above holding is in accord with other de-
cisions of this court. See *Southern Michigan Na-
tional Bank* v. *Byles,* 67 Mich. 296; *Third National
Bank of Detroit* v. *Haug,* 82 Mich. 607 (11 L. R. A.
327). The decree entered in the circuit court is af-
firmed, with costs to appellees.

CHANDLER, C. J., and BOYLES, STARR, WIEST,
BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.