26 Ill. App.3d 430 (1974)
325 N.E.2d 657
MILTON R. KRAMLICH, Plaintiff-Counterdefendant-Appellant,
v.
HOME FEDERAL SAVINGS & LOAN ASSOCIATION OF CHICAGO, Defendant-Counterclaimant-Appellee.  (WALTER E. HELLER & COMPANY, Counter-defendant-Appellant; L.L. ROERKOHL et al., Counterdefendants-Appellees.)
No. 58416.
Illinois Appellate Court  First District (3rd Division).
December 31, 1974.
Rehearing denied March 6, 1975.
*431 Suzanne M. Boden, of Chicago, for appellant.
William E. Ray, Jr., of Chicago, for appellees.
Judgment affirmed as modified in part; reversed and remanded in part.
Mr. JUSTICE MEJDA delivered the opinion of the court:
Plaintiff, Milton R. Kramlich, brought action for specific performance against Home Federal Savings & Loan Association of Chicago (Home Federal) to honor an assignment from Walter E. Heller & Company (Heller) to Kramlich of certain pledged savings accounts on deposit with Home Federal. Home Federal filed an answer and a counterclaim for interpleader, alleging conflicting claims to the savings accounts by Kramlich, Heller, L.L. Roerkohl and Winona National and Savings Bank of Winona, Minnesota, who were made counterdefendants. Following trial without a jury, a judgment was entered which declared Roerkohl the owner of the savings accounts and further ordered Heller and Kramlich to pay to Roerkohl $66,641.28. Kramlich and Heller, appellants, jointly appeal from the judgment.
The instant appeal involves the conflicting claims of Kramlich and Roerkohl to certain pledged savings accounts arising out of a series of assignments and subordination agreements. The pertinent facts follow. In 1962, the pledged savings accounts on deposit at Home Federal were assigned to Roerkohl. On August 2, 1963, Roerkohl subordinated his interest in the accounts Nos. 95090, 95078, 95038, 95105 and 79631 to Heller as security for a loan from Heller to Mortgage Funding Corporation (Mortgage Funding). The subordination agreement signed by Roerkohl provided:
"* * * the undersigned * * * hereby expressly subordinates his interest in said accounts to the interest of WALTER E. HELLER & COMPANY in the accounts assigned therein and thereby as security for the obligations of MORTGAGE FUNDING CORPORATION to WALTER E. HELLER & COMPANY, evidenced by a certain Note of even date herewith in the principal amount of $130,000.00, together with interest thereon as in said Note provided and service charges with respect to said accounts as set forth in the Loan Agreement between MORTGAGE FUNDING *432 CORPORATION and WALTER E. HELLER & COMPANY of even date herewith."
The collateral note of Mortgage Funding dated August 2, 1963, evidencing the above loan, countained the following printed provision:
"To secure the payment of the principal and interest of this note and all renewals and extensions of the same or any part thereof and any and all other sums, indebtedness and liabilities now or hereafter owing or to become owing from the undersigned to the payee, or the holder hereof, howsoever created, * * * the undersigned has assigned, pledged, deposited and delivered to the payee the following (hereinafter called `Collateral'):"
The note continued with the following typewritten description:
"Certain savings share accounts with Home Federal Savings & Loan Association, Chicago, Illinois, and all other accounts and sundry collateral, all in accordance with written agreements between the maker and the payee, including a Letter Agreement of even date herewith."
On August 2, 1963, Mortgage Funding and Heller entered into the letter agreement referred to in the note. The agreement included a paragraph stating that Mortgage Funding was in the business of acquiring, at a discount, ownership of savings share accounts in savings and loan associations. It further stated that Mortgage Funding was desirous of borrowing funds from Heller from time to time to be secured by collateral as may be required.
Pursuant to a subordination executed by Roerkohl to Heller of his interest in savings accounts Nos. 95025, 95038, 79631, 95090 and 95078, Heller on October 28, 1963, loaned $65,000 to Mortgage Funding upon its note which stated that the loan was made in accordance with written agreements between the maker and the payee, including the letter agreement dated August 2, 1963. The October 24, 1963, subordination to Heller for the purpose of making loans to Mortgage Funding from time to time "provided that the total principal amount of such loans shall not exceed sixty per cent (60%) of the balance * * * and further provided that the proceeds of any loans made on the security of said Accounts shall be made payable jointly to MORTGAGE FUNDING CORPORATION and the undersigned."
Thereafter, Heller made loans to Mortgage Funding of $17,000 on February 13, 1964, $12,000 on June 5, 1964, $17,000 on October 1, 1964, and $35,000 on August 10, 1965. Kramlich personally guaranteed each of these loans, excluding the February 13, 1964 loan. Each loan was evidenced by a note which provided that it was secured by "[a]ll savings share accounts with Savings and Loan Associations heretofore or hereafter *433 assigned, transferred and delivered by maker to payee." The February 13, 1964, note provided that the collateral included "all other accounts and sundry collateral, all in accordance with written agreements between the maker and the payee, including a Letter Agreement dated August 2, 1963." Roerkohl received the proceeds of only the October 28, 1963, loan. He received no notice of the other loans which were made payable directly to Mortgage Funding.
Mortgage Funding defaulted in its obligations to Heller. As of April 7, 1967, the amount of $86,418.65 was due to Heller on the unpaid loans of Mortgage Funding. The parties stipulated at trial that as of that date, Heller held $29,766.05 representing proceeds from the Roerkohl accounts which had matured. The original notes for $130,000 and $65,000 had been discharged. Kramlich, pursuant to his guarantee, paid the full amount due Heller, who thereupon turned over to Kramlich the pledged savings accounts in question and other collateral, together with the payment of $29,796.83. The pledged savings accounts in controversy were those specified in the subordination dated August 24, 1963.
On August 29, 1972, the trial court entered an order which found the issues in favor of Roerkohl and against Kramlich, specifically:
"3. That L.L. Roerkohl's subordinations dated August 21, 1963 and October 24, 1963 extended to the two promissory notes to Walter E. Heller and Company in the principal amounts of $130,000.00 and $55,000.00 [sic], respectively; that as of August 4, 1966 said notes had been paid in full; that Heller's interest in all collateral savings accounts covered by said subordinations ceased upon such repayment and Roerkohl thereupon became entitled to the sum of $73,409.81, plus interest originating from said accounts.
4. The court further finds that Roerkohl is entitled to the following sums:
(a) All sums currently on deposit at HOME FEDERAL SAVINGS AND LOAN ASSOCIATION in pledged savings accounts numbered 95025, 79631, 95038, 95078, 95090, in the amount of $59,011.15 as of the date of this order and all future available funds valued at $6,115.00 as of the date of this order.
(b) The court finds that Roerkohl is entitled to the sum of $73,409.81, plus interest in the sum of $58,357.62 or a total amount of $131,767.43 as of the date of this order to which the sum of the amounts on hand and to become available from HOME FEDERAL SAVINGS AND LOAN ASSOCIATION are to be applied in the total amount of $65,126.15."
The order decreed that Roerkohl was entitled to all pledged savings *434 funds in the above numbered accounts held by Home Federal available in the amount of $59,011.15 as of the date of the order and all future available funds valued at $6,115, also as of the date of the order, and that upon turnover of the available funds, Home Federal be dismissed. It further decreed that Roerkohl have and recover from Kramlich and Heller $66,641.28 in full satisfaction of the Roerkohl claim against Heller and Kramlich.
Appellants Kramlich and Heller contend that the court's determination that Roerkohl's subordinations were limited to two loans, $130,000 and $65,000 (shown as $55,000 in the order), is against the manifest weight of the evidence. In the alternative, they maintain, without citation of authority, that interest in the amount of $58,357.62  if any should be charged at all  is excessive.

I.
The thrust of the central argument of appellants Kramlich and Heller is that the subordination agreement of August 2, 1963, authorized Heller to make additional loans to Mortgage Funding and to use as collateral the pledged savings accounts. They do not contend that the pledged savings accounts should be forfeited as a result of Mortgage Funding's default on subsequent loans made by Heller pursuant to the October 24, 1963, subordination by Roerkohl and the October 28, 1963, loan of Heller. The 1964 and 1965 loans were made payable directly to Mortgage Funding. The later subordination of October 24, 1963, permitted Heller to make loans against such collateral from time to time subject to the conditions that the principal amount of such loans would not exceed 60 per cent of the balance due on said pledged accounts, and that the proceeds of such loans be made payable jointly to Mortgage Funding and Roerkohl. Since the loans were not payable jointly as required, the use of the pledged collateral to secure additional loans was contrary to the express limitations set forth in the October 24, 1963, subordination. The agreement specifying the limitations on the use of the pledged collateral is controlling. See Horton v. McFerson (1934), 94 Colo. 361, 30 P.2d 256, 258; State v. Grand Rapids Savings Bank (1942), 304 Mich. 55, 7 N.W.2d 220, 222.
Appellants maintain that the terms of the August 2, 1963, subordination were not limiting, but rather, were descriptive of the use of the collateral. They argue that the note of August 2, 1963, between Mortgage Funding as maker and Heller as lender was incorporated by reference in the subordination agreement as was the loan agreement between the same parties. Kramlich and Heller therefore reason that Mortgage Funding, having executed the note which provided that the collateral therein described *435 was "to secure the payment of the principal and interest of this note and all renewals and extensions of the same or any part thereof and any and all other sums, indebtedness and liabilities now or hereafter owing to or to become owing from the undersigned to the payee * * *," did thereby properly obligate such collateral for future advances within the scope of the subordination agreement. On the other hand, Roerkohl contends that the subordination agreement of August 2, 1963, limited the use of the pledged savings accounts as collateral only for the $130,000 loan. In Union Brewing Co. v. Inter-State Bank & Trust Co. (1909), 240 Ill. 454, 461, 88 N.E. 997, our supreme court stated:
"The terms of the contract under which the property is pledged may be such as to authorize it to be held for the satisfaction of other debts in existence at the time of the execution of the contract and also for future advances which may be made by the pledgor. * * * The contract is to be taken in the sense in which it was, in fact, understood by the parties. [Citations.]"
In the instant case we must look to the subordination agreement of August 2, 1963, to determine its scope. If a limitation upon the scope of the lien had been intended, such limitation must have been impressed in the agreement. (See Buchanan v. International Bank (1875), 78 Ill. 500.) In Marshall Field & Co. v. J.B. Noelle Co. (1967), 81 Ill. App.2d 409, 414, 226 N.E.2d 454, we stated that in ascertaining the intent of the parties, the court "must look to the agreement as a whole, to its nature, purpose, and the subject matter with which it deals and, if ambiguous, to the circumstances under which it was made. Generally, words in a contract are to be given their usual and primary meaning at the time of the execution of the contract. Contracts must receive a reasonable construction according to the intention of the parties if that intention can be ascertained from their language. A reasonable construction will be preferred to one which is unreasonable. * * * An ambiguous contract will be construed most strongly against the party who prepared the contract and chose the words used, since he is the one who is responsible for the ambiguity [citations], and, finally, indemnity and hold-harmless agreements are to be strictly construed. [Citation.]"
If the subject subordination agreement is sufficiently ambiguous, as the trial court stated, reasonable men may differ in interpreting its provisions. Roerkohl subordinated his interests in the pledged accounts to the obligations of Mortgage Funding to Heller. However, from a reading of that document in its entirety it appears that those obligations were specifically designated and referred to as (1) the loan in the principal amount of $130,000; (2) the interest on said loan; and (3) the service charges relative to those accounts as set forth in the loan agreement of August 2, *436 1963 between Heller and Mortgage Funding. Appellants urge us to interpret the agreement to mean that Roerkohl subordinated his interests to all of the obligations of Mortgage Funding as provided under its note to Heller, which would be in addition to the interest and service charges.
Appellants place great reliance on Globe Iron Construction Co. v. First National Bank (1965), 205 Va. 841, 140 S.E.2d 629. There a contractor subordinated his lien claim to trust deeds described in the subordination agreement, parenthetically specifying the amounts of the indebtednesses in the trust deeds, and also "all and all manner of liens, claims and demands whatsoever which the Contractor has or might or could have on or against Towers [the property owner] * * *." (Emphasis in original.) (205 Va. 841, 847, 140 S.E.2d 629, 633.) The court held that there was no ambiguity and that the words set forth in parentheses were merely descriptive of the mortgage indebtednesses and were not designed to limit the subordination of lien to the indebtedness stated, but also extended to all debts secured by such trust deeds. 205 Va. 841, 847, 140 S.E.2d 629, 633.
The subordination in the case before us specified the obligations of Mortgage Funding to which Roerkohl was subordinating his interests in the subject savings accounts, which facts are distinguishable from Globe. We are of the opinion that the subordination did contain a clear expression of intent that the collateral was not to be used for future advances. The following facts introduced into evidence support our conclusion on this issue.
 1 There is sufficient evidence of an intent that the August 2, 1963, subordination was limited to a loan of $130,000, interest and service charges. A different group of accounts was the subject of the August subordination. Roerkohl had no financial interest in Mortgage Funding. The October subordination was executed to allow for future advances against the pledged collateral under specified conditions. In a letter dated August 30, 1965, Heller advised Roerkohl that there remained owing $45,000, and enclosed a summary of the disbursements and application of monies received in connection with the loans made to Mortgage Funding, and stated: "As you will see, we have taken into consideration only two advances in the amount of $130,000.00 and $55,000.00, the sum of which is covered by your subordination." (Emphasis added.) This letter was written after the date of the last loan from Heller to Mortgage Funding and indicates the construction placed on the August 1963 subordination by Heller. We therefore conclude that the judgment, in declaring Roerkohl the owner of accounts Nos. 79631, 95025, 95038, 95078, and 95090 is not against the manifest weight of the evidence. See Brown v. *437 Commercial National Bank (1969), 42 Ill.2d 365, 371, 247 N.E.2d 894, cert. denied, 396 U.S. 961.

II.
Appellants further argue that interest in the amount of $58,357.62 as provided in the judgment  if any should be charged at all  is excessive. Initially, appellees contend in this court that the judgment which was entered on August 29, 1972, nunc pro tunc as of August 28, 1972, is an agreed order and therefore cannot be contested on appeal. However, upon examination of the record filed, we find that the written order bears the stamped words "Agreed Order Presented by Atty _____________" in the space below the signature of the judge, but we find no signatures thereon of any attorney, nor any other indication that it was an agreed order. Therefore, in the absence of some evidence showing that the order was entered by agreement or as an agreed order, we cannot countenance appellees' argument.
Appellees insist that on review we should not consider the interest issue for the reason that appellants have failed to support their contention with appropriate citation of authority. Appellees cite and rely upon the pronouncement in Village of Roxana v. Costanzo (1968), 41 Ill.2d 423, 426, 243 N.E.2d 242, wherein the court stated:
"No authority is cited nor is any argument made beyond making the bare contention. Presenting a question in this manner fails to comply with the rules of this court and no consideration can be given to the point here. Littell v. City of Peoria, 374 Ill. 344."
We have thoroughly reviewed both Costanzo and Littell. The court in both cases refused to consider the issues so presented, purportedly for the respective appellants' failure to comply with now Supreme Court Rule 341(e)(7). (Ill. Rev. Stat. 1973, ch. 110A, par. 341(e)(7).) The cited subsection provides that the appellant's brief in the reviewing court shall contain, inter alia, "Argument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on."
Appellants' argument as to this issue contains little more than the bare contention that the interest is excessive. No citation of authorities relied upon or references to the record are submitted to support appellants' vague theory of how the trial court arrived at the specified amount. Nonetheless, in view of the substantial nature of the issue presented and the lack of evidence in the record to support the award of interest, we decline to summarily dismiss consideration of the question.
Appellees further maintain that we are precluded from reviewing the propriety of the award of interest and state that a "complex and intricate *438 account is not a fit subject for examination by a reviewing court." In support thereof they refer to the cases of Hewitt v. Dement (1870), 57 Ill. 500, 507, and Harts v. Emery (1899), 184 Ill. 560, 565, 56 N.E. 865. In Hewitt, the court stated that it would not inquire into the alleged errors in the computation of the amount due where the parties had failed to submit the matter of an accounting to a master in chancery and further failed to take the proper exceptions before him and in the court below. In Harts, the court held that whether certain partial payments exceeded the interest due and reduced thereby the sum upon which interest should thereafter be computed was a question of fact not open to review in the supreme court. In Harding v. Kuessner (1898), 172 Ill. 125, 49 N.E. 1001, the court on appeal affirmed part of the judgment and allowed pro-rata interest, stating that "whether the amount so allowed for interest was excessive is a question of fact, and therefore not open for review."
Contrary to the holdings in the foregoing cases, Supreme Court Rule 366 (Ill. Rev. Stat. 1973, ch. 110A, par. 366), provides in pertinent part:
"(b) Scope of Review

(1) General.
(i) Error of Law. Any error of law affecting the judgment or order appealed from may be brought up for review.
(ii) Error of Fact. Any error of fact, in that the judgment or order appealed from is not sustained by the evidence or is against the weight of the evidence, may be brought up for review.
* * *
(3) Scope and Procedure on Review in Nonjury Cases. In nonjury cases the following rules govern:
(i) Special Findings and Motions Unnecessary. No special findings of fact, certificate of evidence, propositions of law, motion for a finding, or demurrer to the evidence is necessary to support the judgment or as a basis for review. The sufficiency of the evidence to support the judgment is subject to review without formal action to preserve the question."

III.
At common law, interest could not be recovered in the absence of an agreement to pay it. (Whittemore v. People (1907), 227 Ill. 453, 474, 81 N.E. 427.) However, legislation has been enacted to provide for the collection of prejudgment interest in certain cases. Section 2 of "An Act in relation to * * * interest * * *" (Ill. Rev. Stat. 1973, ch. 74, par. 2) provides:

*439 "Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing; on money lent or advanced for the use of another; on money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance; on money received to the use of another and retained without the owner's knowledge; and on money withheld by an unreasonable and vexatious delay of payment."
Appellants maintain that appellees are entitled, at most  if anything  to interest computed at the "statutory rate" which is stated to be 6 percent without citation of any statute or other authority. It is argued that the amount of interest was computed at 9 percent on $73,409.81 for the period from October 28, 1963 (the second subordination by Roerkohl), to the date of the order. In the "Findings of Fact" the judgment order provided that "Heller's interest in all collateral savings accounts covered by said subordinations ceased upon such repayment and Roerkohl thereupon became entitled to the sum of $73,409.81, plus interest originating from said accounts." (Emphasis supplied.) A reasonable interpretation of the order is that Roerkohl is entitled to $73,409.81, the value of the pledged accounts as of the time the loans of $130,000 and $65,000 were paid, plus the accumulated interest earned thereon to the date of the order.
As previously indicated, however, the court found that the value of the accounts as of the date of the order was $65,126.15. The record shows that some of the funds in those accounts became available and were actually withdrawn by Heller after the loans in the principal amounts were paid. More important, however, is what the record does not show. The present state of the record leaves to our conjecture (1) whether or not the amounts then on deposit with Home Federal included accumulated interest; (2) the interest rate and principal amount upon which interest is computed; and (3) the period of time for which interest is accumulated. No evidence was introduced to support the award of interest. The court orally stated, at the conclusion of all the evidence, that it would "execute a decree in accordance therewith, when it is presented, finding that he [Roerkohl] is entitled to twenty-nine thousand dollars from Heller and Company and the fifty-eight thousand or whatever it is from the terms of the pledges that are still there. I don't know whether the numbers come out right or not. You are going to have to work out that because there's no evidence introduced with respect to that. * * * That will be my finding." At this point in the proceedings there had been no determination that interest was allowable or granted.
*440 We have carefully examined appellants' argument upon the interest issue which in sum is limited to the following:
"The only interest that should be considered, if any should be charged at all, is that of the statutory rate. The interest charge imposed by the Court is in the sum of $58,357.62. The interest at statutory rate for the same period is the sum of $38,904.01 or a difference of $19,453.61. It would appear unjust and unreasonable to enrich Roerkohl at the expense of Kramlich in the imposition of a 9% rate of interest charge based on a 9% charge on $73,409.81 from October 28, 1963 to the date of the order." (Emphasis supplied.)
Except for that singular phrase, "if any should be charged at all," it is not otherwise urged that interest should not be allowed. However, it is our conclusion that the trial court's reference to interest in the "Findings of Fact" meant the accumulation of interest upon the principal amount of $73,409.81 that was, or may have been, on deposit at Home Federal at the time the loans of $130,000 and $65,000 were paid.
If the award of interest was to be interpreted as statutory interest as urged by appellants, we must conclude that such award is not supported by the evidence. The only ground on which Roerkohl could recover prejudgment or statutory interest pursuant to the provisions of section 2 of the interest act (Ill. Rev. Stat. 1973, ch. 74, par. 2) would be that there had been an unreasonable and vexatious delay in the transfer of the subject accounts and their proceeds from Heller to Roerkohl after demand. Appellees in their answer and counterclaim specifically prayed that "the Court allow interest upon all monies withheld compounded and damages for withholding against Walter E. Heller & Company." Although the record indicates that Roerkohl served a demand for payment upon Heller some time in April of 1967, we specifically note the oral findings of the trial court that Kramlich had failed to prove his claim and that "both Kramlich and Roerkohl are relatively innocent in terms of what occurred here * * *." We find no evidence in the record to sustain the award of statutory interest for unreasonable and vexatious delay in payment. O'Heron v. American Bridge Co. (1913), 177 Ill. App. 405, 409.
 2 We further find that the award of $58,357.62 as interest which may have been earned on the pledged accounts of monies on deposit at Home Federal is without evidentiary support. We do not hold that the trial court erred in awarding Roerkohl the accumulated earnings on the amounts on deposit at Home Federal from the date the loans of August 2, 1963, and October 28, 1963, were repaid to the dated of the judgment order. However, in the absence of evidence or specified findings, the *441 award in the above amount appears so patently excessive that a remand of that issue for further proceedings is required.

IV.
Appellants have failed to raise or argue on appeal the sufficiency of the evidence to support the finding that Roerkohl is entitled to the amount of $73,409.81, as set forth in the findings of fact included in the judgment order, and have thereby waived the issue on review. Notwithstanding, the said finding of the sum of $73,409.81 due Roerkohl is not contrary to the manifest weight of the evidence and is therein affirmed.

V.
Accordingly, the judgment of the circuit court of Cook County is modified to provide that Roerkohl have and recover from Kramlich and Heller the sum of $8,283.46, being the sum of $66,641.28 therein provided less the $58,357.82 awarded as interest. The judgment as modified is affirmed except as to the award of interest which is reversed and remanded for further proceedings not inconsistent with the opinions expressed herein.
Affirmed as modified in part; reversed and remanded in part.
McNAMARA, P.J., and DEMPSEY, J., concur.